## WOOD, Respondent, *vs.* SIMMONS, Appellant.

1. Upon a sentence of divorce, a wife becomes entitled to all *choses in action* not previously reduced into possession by the husband, as by survivorship upon the death of the husband.
2. A particular assignment for value by husband and wife of the wife's reversionary interest in a chattel, expectant on the death of a tenant for life, does not defeat the wife's right of survivorship, where the husband dies before the death of the tenant for life. The assignment, in such a case, does not operate as a constructive reduction into possession by the husband.

*Appeal from Saline Circuit Court.*

In 1836, the plaintiff, who was the daughter of Rice Wood, deceased, intermarried with Albert G. Wood. In 1848, her father died intestate, leaving a widow and four children, including herself. Afterwards, on a division of the estate, the widow's dower was assigned and delivered to her, and consisted of real estate, some slaves and other personal property. In May, 1849, the plaintiff and her husband, by their deed of that date, duly acknowledged and certified so as to pass the wife's real estate, in consideration of $500, sold to the defendant, Simmons, the wife's interest in this dower property. In 1850, the plaintiff obtained a sentence of divorce against her husband, dissolving the marriage. Afterwards, in 1850, the plaintiff's mother died. The defendant now claims the wife's interest in the dower slaves under the deed of May, 1849. The plaintiff has several children, all the property received from her father went into the husband's possession and was squandered by him, and she left to support herself and children.

The prayer of the plaintiff's petition was, that the property be secured to her for the support of herself and children, and the defendant restrained from insisting on his title acquired by the deed of 1849. The defendant demurred for want of sufficient matter to constitute a cause of action and for defect of parties. The demurrer was overruled, and the defendant failing to answer, the court decreed a perpetual injunction against the defendant's setting up title under the deed to the slaves and other personal property, and defendant appealed.

*A. Leonard*, for appellant. 1. The relation of husband and wife between these parties is extinguished by the divorce, and so no question can arise now about the wife's equity to a settlement, or her right to a maintenance out of her own property, founded on her husband's desertion or inability to support her. 2. A conveyance for value by husband and wife of her reversionary interest in a *chose in action* passes her interest to the assignee, discharged of her right of survivorship. (4

Rawle, 472. 2 Atk. 207. 2 Atk. 549. 2 P. W'ms, 608. 2 Kent's Comm. (7th ed.) 117. 1 Tucker's Comm. 118.) 3. If this be otherwise, her interest in these dower slaves is a vested legal estate in remainder, and not a mere reversionary interest in a *chose in action*, in which the wife has a right of survivorship. (2 Conn. Rep. 567. 3 Howard (Miss.) Rep. 394. 5 Littell, 258. 2 B. Monroe, 77. 10 B. Monroe, 412. 3 Littell, 277.) 4. If the plaintiff's right to the property be admitted, there is no ground stated in this petition to warrant this judgment against the defendant. (2 Story's Eq. 700, *a*, p. 13. 3 Brown's Ch. Rep. 15. 5 Vesey, 286. 3 Mylne & Craig, 107, (14 Eng. Ch. Rep.)

*Napton*, for respondent. 1. All assignments made by the husband of the wife's outstanding personal chattel, which is not and cannot then be reduced into possession, whether the assignment be in bankruptcy, or under the insolvent acts, or to trustees for the payment of debts, or to a purchaser for valuable consideration, pass only the interest which the husband has, subject to the wife's legal right by survivorship. (*Purdew* v. *Jackson*, 1 Russ. Ch. Rep. 1. *Hornsby* v. *Lee*, 2 Madd. 16. *Mitford* v. *Mitford*, 9 Ves. 87. *Stamper* v. *Barker*, 5 Mad. 157. *Morley* v. *Wright*, 11 Ves. 17. *Honner* v. *Morton*, 3 Russ. 65. *Styfe* v. *Everett*, 1 Mylne & Craig, 37. *Woodland* v. *Croucher*, 12 Ves. 177. *Richards* v. *Chambers*, 10 Ves. 580. *White* v. *St. Barbe*, 1 Ves. & B. 405. *Pickard* v. *Roberts*, 3 Madd. 385. *Pierce* v. *Thornby*, 2 Sim. 181. *Ellison* v. *Elwin*, 13 id. 309. *Burnett* v. *Kynaston*, 2 Vern. 462. *Gray* v. *Kentish*, 1 Atk. 280. Gill. Eq. R. 38. 2 Story's Eq. §1413. 2 Kent's Comm. 116, 119, notes.) 2. It will not be disputed that in this case, the wife would be entitled to her equity, if the husband were living. If it is, there is an unbroken current of authorities in favor of the proposition, both English and American. (3 Kent's Comm. (7th ed.) p. 138. 2 Story's Eq. tit. Husb. & Wife. *Schuyler* v. *Hoyt*, 5 John. Ch. Rep. 208. 4 John. Ch. Rep. 318. 6 John. Ch. Rep. 178. 5 John. Ch. Rep.

464. 3 Cow. 590.) That the husband's death does not affect the wife's equity, except in cases where she gets the the whole as survivor, is abundantly shown by the authorities. (5 J. C. R. 475. 2 Atk. 417. 3 Ves. 506. 1 Russ. Ch. Rep. 28.) 3. It is immaterial whether the wife took in this case by survivorship, or was merely entitled to her equity. In either event, the judgment upon the demurrer must be sustained. The court may, in its discretion, give the whole or a part only of the property to the wife, according to the circumstances, and there is nothing in the record to show any improper exercise of discretion in giving the whole. On the contrary, the facts disclosed in the petition show a case in which she was clearly entitled to the whole.

RYLAND, Judge, delivered the opinion of the court.

The questions involved in this case are of much importance to the community, and have engaged our earnest and serious attention. These questions have met with different solutions in some of the states of our Union. But we are inclined to think that the weight of authority, both in England and in this country, is on the side of the plaintiff, Wood. Do the facts in this case authorize the court to declare that, in the present state of the law, the wife's right of survivorship must prevail over the assignee of the husband and wife? We answer in the affirmative.

1. Here, the divorce obtained by the wife from the husband must, in law, be considered the same as the death of the husband; and the wife must be looked upon as his widow. In the case of *Browning* v. *Headly*, (2 Rob. Va. Rep. 340,) the divorce obtained by the wife from the husband by the legislature of Kentucky, was considered as operating as the civil death of the husband. Judge Stanard said: "I concur in the opinion of Judge Allen, that the effect of the act of divorce upon the rights of the wife is to place her in the same position as if her husband had then died." I dismiss, therefore, this question, by stating that there is no doubt of the correct-

ness of the judgment below, so far as it considers the divorce of the wife from the husband operating so as to place the wife in the situation she would have occupied had her husband then died.

2. But the more important question, " does the conveyance for value of the husband and wife of the wife's reversionary interest in the slaves and other property belonging to her mother in her dower right, pass the wife's interest to the assignee, discharged of her right of survivorship ?" remains yet for our consideration. This question we, after considering the various authorities, unhesitatingly answer in the negative.

By the common law, the husband was entitled to administration on his deceased wife's estate, and, like all other administrators, had exclusive enjoyment of the residuum after payment of debts.

The statute of 22 and 23 Charles II, chap. 10, compelled the administrator, after the payment of funeral charges, debts, and all expenses, to distribute the remainder of the personal estate to the wife and children, and children's children, if there be any, or otherwise to the next of kindred to the dead person.

There were doubts whether, under this last statute, the husband was not, like all other administrators, compelled to make distribution among the next of kin of the deceased wife.

To remove these doubts, the 25th section of 29 Charles II was enacted, which placed the estates of *feme coverts* dying intestate without the operation of the 22 and 23 Charles II, and left their husbands the same power and privileges as they had before the passage of the 22 and 23 Charles II. The husband then succeeded, by his right to administer upon the estate of his wife, after payment of funeral expenses and debts, to the residuum of her estate, discharged from the burden of distribution among her next of kin. This rule of the common law has been adopted by some of the states of our Union, and not by others. The state of Missouri has not adopted it. Nor can the husband, as the wife's administrator, receive the estate of the wife with us, discharged from the burden of distribution; but, like other administrators, he must account to those entitled,

under our laws, to the same. We call in the kin of the wife from the four corners of the earth, and distribute to them before the husband can take.

In the case of *Leaky's Adm'r* v. *Maupin*, (10 Mo. Rep. 372,) this court held the following doctrine—the opinion delivered by Judge Scott, the other judges concurring : " Marriage is, by law, an unqualified gift to the husband of all the personal estate of the wife in her possession at the time of its taking place, and if he should die in an hour after the marriage, having received a large personal estate from the wife, all of that estate, except what our law allows her as dower, would go to the kindred of the husband and not to the wife. But as to *choses in action*, or mere rights to receive money or property from another, the law only gives the husband a *qualified* right to them, viz : on condition that he reduces them to possession during coverture, and if he fails to do this, if the wife survive, she will be entitled to them. This principle is applicable as well to *choses* belonging to the wife at the time of marriage, as to those which accrue to her during coverture. The distinction between the two classes of *choses* is this, that, in a suit to recover the former, the wife must be joined with the husband ; in a suit for the latter, the husband may join his wife or not, at his election ; if he sues alone and recovers judgment, it is an election to have the chattel in his own right freed from the right of survivorship in the wife ; if he joins her in the suit, her right of survivorship still continues after judgment." This decision has an important bearing on the case now before us. The right of the wife's survivorship to *choses* not reduced by the husband into possession before his death is plainly announced, and that there is no distinction in such an event between *choses* at the marriage and *choses* during coverture. We must then see if there had been such a reduction into possession as will enable the husband to assign, discharged from the right of the wife's survivorship.

In *Purdew* v. *Jackson*, reported in 1 Russ. Ch. Rep. 1, Sir Thomas Plumer, Master of the Rolls, held that, " Where hus-

Wood *v.* Simmons.

band and wife, by deed executed by both, assign to a purchaser for valuable consideration a moiety of a share of an ascertained fund, in which the wife has a vested interest in remainder, expectant on the death of a tenant for life of that fund, and both the wife and the tenant for life outlive the husband, the wife is entitled, by right of survivorship, to claim the whole of her share of the fund against such particular assignee for a valuable consideration." This case was determined in February, 1824, and may now be considered as the settled doctrine of the English chancery. This case was most thoroughly investigated, being twice argued by Mr. Sugden for the particular assignee for value, and by Mr. Shadwell for the wife. A general review of the English cases will be found in this case.

Sir Thomas Plumer, Master of the Rolls, begins by saying : " The property in question is a moiety of one-seventh share of a fund in court, which Mrs. Bolton was entitled to have transferred to her, upon the death of Isabella Purdew. In October, 1812, she and her husband transferred, for a valuable consideration, this moiety to Rose. In the assignment, Bolton contracted that, immediately after the death of Isabella Purdew, Rose should have the right to demand and sue for this personal chattel in the name of Mr. and Mrs. Bolton, or either of them, and that, in the mean time, his life should be insured. Bolton died in 1819, in the life time both of Isabella Purdew and Mrs. Bolton. The tenant for life being now dead, Rose insists upon his right under the assignment, and that raises the general question whether, where the wife has an interest in reversion or remainder, in a personal chattel, expectant on the death of another person, and the husband assigns this interest for valuable consideration and dies before the determination of the life estate, the right of the surviving wife is barred."

The Master of the Rolls proceeds : " There are two points which deserve attention ; first, what is the nature of the legal right of the husband in a personal chattel to which the wife is entitled in reversion or remainder ; secondly, has the person to whom, for valuable consideration, the husband assigns a chat-

tel so circumstanced, the same right with his assignor, or has he a different or a better right?" He then quotes from Mr. Roper's Treatise on the law of Husband and Wife : " Marriage is only a qualified gift to the husband of his wife's *choses in action*, viz : upon condition that he reduce them into possession during its continuance ; for if he happen to die before his wife, without having reduced such property into possession, she, and not his personal representatives, will be entitled to it."

" What then, is meant by a *chose in action ?* The terms " *chose in action*," and " reduced into possession," are legal phrases, not borrowed from a court of equity, but derived from the language and doctrines of the common law ; and in dealing with them, it is of importance that we should confine ourselves strictly to the subject before us, " a personal chattel," and not perplex ourselves with principles applicable only to real property. The right of property in a personal chattel is inseparable from possession. The law of England does not know such a thing as the possession of a personal chattel being in one man, unless by the authority of the rightful owner, while the right of property is in another. If you have not the possession, you may have an immediate right of action; but till you recover the possession of the chattel, you have not the right of property. When it is reduced into possession, the property in it vests, and not before ; for the property in a personal chattel does not become complete till possession is obtained. Therefore, the law of England, speaking of the different sorts of property which a married woman may have, and designating a *chose in action* to be a mere right of action to a personal chattel not in actual possession, holds that the husband must, as a condition, without fulfilment of which he does not acquire a right to it, reduce the thing into possession ; that is, he must make the property his own, for, without possession, the property is not his ; he has only a right of action, which will ultimately belong either to himself or to his wife, according as the one or the other may happen to survive. Now, in 1812, the

property in question, strictly speaking, was a *chose in action ;* it was not, it could not be in possession ; not only was it not in possession, but there was not even a present right of action ; the right of action was future, and would necessarily remain so till the death of Isabella Purdew. The thing belonging to the wife was therefore a personal chattel, legally denominated a *chose in action*, as contra distinguished from a chattel reduced into possession."

" The next question is, " What is the effect of the assign- ment ?" A great deal of fallacy has been introduced into this part of the argument, from not considering that an assignment makes no alteration in the thing transferred. When the husband has assigned the wife's *chose in action*, does the thing assigned continue to be a *chose in action*, or does it become a personal chattel in possession ? If it does not continue after the transfer to be a *chose in action*, what makes it cease to be so ? A *chose in action* cannot cease to be a *chose in action*, except by being reduced into possession ; but it would be a contradiction in terms, in the very statement of the case, to say that this fund, which could not be reduced into possession till 1822, was reduced into possession in 1812. It is in vain to talk of Bolton's assignment as being a constructive reduction into possession. In cases where there is a present right, and an assignment of it is immediately followed by possession of the thing, the assignment, being the commencement of that immediate actual possession, may be regarded as a kind of constructive possession. But to say that the assignment of a *chose in action*, which is at the time incapable of being reduced into possession, is to be construed as a reduction of it into possession, is to ascribe to the assignment the effect of totally transforming the nature of the thing assigned. Up to the time of Isabella Purdew's death, the thing which Bolton assigned continued to be a *chose in action*. While it was in that state, Bolton died without having been able to fulfil the condition on which alone the law gives the husband the *choses in action* of the wife ; therefore, the legal right of the wife now attaches

upon it, and if a court of equity were to take it from her, equity would not follow, but oppose the law. The wife is entitled by the law to take the chance of outliving the husband, and it is the law which says that, if she survives him, the *choses in action* which were formerly her's, shall continue to belong to her. That is the clear legal doctrine, and there is nothing in equity to modify or alter it. Even where a *chose in action* of the wife is sought to be bound by a decree in equity, if the husband dies before the thing ceases to be a *chose in action*, that is, before there is an order for the payment of the money, the consequence in equity is precisely the same as it is at law under analogous circumstances — the surviving wife is entitled. Her title, in such cases, is not a creature of this court ; it is not a mere matter of practice or regulation here ; it is the wife's positive legal right—the result of a fixed rule of law."

In the same case, the Master of the Rolls said : " The doctrine respecting assignments by operation of law has been long settled by a train of cases from *Grey* v. *Kentish* to the present time, without one authority to the contrary. The wife's equity uniformly prevails against the assignees of the bankrupt." "An opinion has certainly prevailed," says Sir Thomas Plumer, " that a distinction subsists between an assignment by operation of law, and an assignment for a valuable consideration to an individual by contract; that the former is no bar to the right of the surviving wife, but that the latter is." He continues : " That there may be, for some purposes, a difference between these two species of assignment, may be true ; but that they should be productive of effects so directly contrary in this instance, is a proposition for which I can find no solid ground. I think both kinds of assignment ought to have the same effect, and that it would be manifest inconsistency to decide the contrary. In both cases, the assignment passes the share of the wife, but passes it *sub modo*, viz : provided the assignees receive the share, or its value, during the life of the husband ; but if he dies before the share is reduced into possession, and it is left to be a *chose in action* when the interest

accrues, the surviving wife is entitled, as well against the assignees for value, as against the assignees by operation of law."

Chancellor Kent says : " The court of chancery has always discovered an anxiety to provide for the wife out of her property in action, which the husband may seek to recover. If he takes possession in the character of trustee, and not of the husband, it is not such a possession as will bar the right of the wife to the property, if she survives him. The property must come under the actual control and possession of the husband, *quasi* husband, or the wife will take as survivor, instead of the personal representatives of the husband."

" A general assignment in bankruptcy, or under insolvent laws, passes the wife's property and her *choses in action*, but subject to her right of survivorship ; and if the husband dies before the assignees have reduced the property to possession, it will survive to the wife ; for the assignees possess the same rights as the husband before the bankruptcy, and none other. It has been accordingly held that a legacy in stock was not reduced to possession by such an assignment, so as to bar the wife's right of survivorship, and the wife took it by survivorship as against the assignees.

" The wife's equity to a reasonable provision out of her property, for the support of herself and her children, makes a distinguished figure in the modern chancery cases, which which relate to the claims of the husband upon the property of his wife in action. If the husband wants the aid of chancery to enable him to get possession of his wife's property, or if her fortune be within the reach of the court, he must do what is equitable, by making a reasonable provision out of it for the maintenance of the wife and her children. Whether the suit for the wife's debt, legacy or portion be by the husband or by his assignees, the result is the same, and a proper settlement on the wife must first be made of a portion of the property. The provision is to be proportioned, not merely to that part of the equitable portion of the wife's estate which the husband seeks, but to the whole of her personal fortune, including what the hus-

band had previously received. And perhaps chancery ought, on just principles, to restrain the husband from availing himself of any means, *either at law* or *equity*, of possessing himself of the wife's personal property in action, unless he would make a competent provision for her." (2 Kent's Com. 138, 139.)

In *Hayward* v. *Hayward*, (20 Pick. 519,) the Supreme Court of Massachusetts declared that, " if a distributive share of intestate personal estate accrue to a married woman during coverture, and the husband die before the decree of distribution, and without any act on his part reducing it to possession, it survives to the wife." In this case, Judge Dewey makes a general review of the English cases, and overthrows the case of *Griswold* v. *Penniman*, (2 Conn. 564,) relied on by the defendant's counsel in this present case to support, in part, his propositions.

I shall not notice, *in extenso*, this opinion of Dewey, Judge ; it is a lucid and able argument in support of what I consider the law on the subject of the wife's right of survivorship. He says : " The general rule, as to *choses in action* which belong to the wife at the time of the marriage, is well settled. They do not vest absolutely in the husband. He acquires by marriage only an inchoate right : he may reduce them into possession and take the avails of them ; but if the wife survives the husband, and the *choses* remain uncollected, she is entitled to them, and they do not pass to his representatives." Such he shows also to be the law in regard to *choses in action* accruing to the wife during coverture, and the attempted distinction between them is without principle.

In *Schuyler* v. *Hoyle*, (5 John. Ch. Rep. 176,) decided in 1821, before the great case of *Purdew* v. *Jackson*, for that was in 1824, Chancellor Kent said : " After looking into the authorities, and upon a consideration of the doctrine of the cases, there remains no doubt in my mind, that the wife was entitled, as survivor, to all that portion of her distributive share which remained in the hands of the administrator of Mr.

Fisher, at the time of her husband's death. We should act in contradiction to the whole course of decisions, if we were to consider the share of the wife, before it passed out of the hands of the administrator, as being reduced to the husband's possession."

In *Pinkard et al.* v. *Smith & wife*, (Littell's Selected Cases, 336, 337,) it is laid down that a vested remainder in slaves, accruing to a woman during coverture, vests in her husband as much as a right in possession would ; and yet it was held that, if the husband should die before the determination of the particular estate on which the remainder depended, it would survive to his wife. Now personal estate of the wife, which the husband reduces into possession, becomes his, and goes to his personal representatives, and not to her's. There is a seeming inconsistency in some of the Virginia decisions, and this Kentucky case is founded on the Virginia decisions. In this case, (*Pinkard* v. *Smith*,) Judge Owsley says : "But notwithstanding the husband, as he survived his wife, might have maintained an action in his own name to recover the slaves, it does not thence follow that the wife would not have been entitled to them as survivor of her husband, had he died before her. To recover the slaves during coverture, the suit might have been brought either in the name of the husband alone, or in the name of the husband and wife. It is a general rule that, wherever the suit may be brought either in the name of husband and wife, or in the name of the husband, the right will survive to the survivor. These observations have been made on the supposition that the interest which a husband gains in the slaves accruing to the wife during coverture, is to be regulated by the principles of the common law in relation to chattels ; and that we have supposed, because we infer that the statute of this country has placed slaves, as to the husband's interest, on the footing of chattels. The statute of this country, to which we allude, (2 Digest 1156,) was taken from a statute of Virginia, in force at the separation ; and by the appellate court of this country, this statute has been construed to place slaves on a

level with chattels accruing to the wife during coverture. Accordingly, in 2 Call's Rep. 447, it was held that slaves devised to the wife during coverture, and not reduced to the husband's possession, otherwise than in his right of executor of the devisor, survived to his wife. So, in a subsequent case, (2 Hen. & Munf. 381,) the principle was fully recognized that, on the death of the husband during the existence of a particular estate in slaves, the remainder, to which the wife was entitled in her right during coverture, survived to her."

In the case of *Upshan* v. *Upshan et al.*, Judge Tucker said: " True it is, William Upshan, by his codicil, gave the appellees what he had no power to *bequeath*, his wife's interest in the dower slaves held by her mother, being merely a reversionary interest, which, in the event of her surviving her husband, without his disposing thereof in his life-time, or reducing the slaves into possession, would survive to her. But it is clear from the words of the codicil, that he thought the slaves were *his own*, and that he had a power to bequeath them by his will. This was clearly a misconception of his right in respect to them; for, though he might have *sold* his wife's reversionary interest, it being a vested interest, yet, if he neglected so to do, he could not dispose of it by will, but it would survive to her."

I confess that there appears to me an absurdity in this opinion of Judge Tucker. Here, the wife's interest in slaves belonging to her mother, in right of dower, is said to be her reversionary interest, but, at the same time, a vested interest. The wife and husband could not, by any process at law or equity, during the life of the mother, have reduced these negroes into their possession. They had no right to the negroes which could be enforced by taking them out of the possession of the real owner for the time being, that is, the mother. The husband could not sell them, so as to deprive his wife of the right of survivorship; nor could husband and wife sell them, so as to deprive her of her right of survivorship by any principles known to the common law; for a tenant for life had

the possession of them. The husband, in the nature of things, could not have reduced them into possession, and all he could have sold would be his right to reduce them into possession after the expiration of the estate for life, and his assignee could have obtained, by such sale, no other or further right than the husband had. Did or could such a sale by the husband change this property of the wife and reduce it to possession? Was it not still a *chose in action* after such a sale? Could the assignee of the husband have reduced it from a *chose in action* to a *chose in possession?*

I know that there are legal fictions, and upon one of these fictions is grounded the distinction that a *chose in action*, accruing to the wife during coverture, vests, at once, in her her husband, because she and her husband are one person in law, and all such *choses in action*, thus accruing during coverture, are vested at once in the husband, because she is merged in him; but *choses in action*, at the marriage, are not thus vested at once, but must be reduced into possession. (*Griswold* v. *Penniman,* 2 Conn. Rep. 566.)

In the recent case of *Browning* v. *Headly,* (2 Rob. Rep. 340,) the rule laid down by Sir Thomas Plumer, in *Purdew* v. *Jackson,* which rule was afterwards confirmed by Lord Lyndhurst, in *Honner* v. *Morton,* (3 Russ. Rep. 65,) that, where a husband assigns personal property, in which his wife has a reversionary interest, expectant on the death of the tenant for life, and the wife and tenant for life both outlive the husband, the wife is entitled by survivorship, in preference to the assignee, is recognized as sound by Judge Allen.

This case also recognizes the doctrine of the English chancery that, where an absolute equitable interest is given to the wife, the court will not permit the husband to recover it, without making provision for the wife, and that the husband's assignee, whether general or particular, takes his interest, subject to the same equity. In this case also, the doctrine of " vested interest" is still kept up, and the husband's assignment of the wife's interest or share in her father's estate, before the execu-

tors assent to pay any portion of it, is held good against the wife in favor of the husband's assignee. The Judge says : "I consider the interest of the wife in her father's estate, at the time of the assignment, as a *present interest, susceptible* of being reduced into possession ; and that the assignment was a special assignment for value, and therefore that she could not take by survivorship." Allen, Judge. Stanard, J. : "I concur that the assignee from the husband, for valuable consideration, of a present ( as distinguished from a reversionary) interest of the wife, has a valid title against the wife, though she survives her husband." This assignee, however, got nothing ; for, under the practice of the courts of the English chancery, the husband and his assignee must make a reasonable provision for the wife, and the court gave the whole of the wife's share to her as a reasonable provision. Judge Allen says : "The wife's interest was susceptible of being reduced into possession, and being a present interest, the assignee must hold." Judge Stanard agrees, because the wife's interest is a present interest, contradistinguishable from a reversionary interest. We may therefore conclude that, under the rule of the English chancery, and the principles of *Purdew* v. *Jackson*, and *Honner* v. *Morton*, the sale by the husband of his wife's interest in the slaves held by her mother in dower, the mother and wife both outliving the husband, will be subject to the wife's right of survivorship, should the case ever occur in Virginia. The husband, in our law, has no right to administer upon his wife's estate, and take her estate for his own benefit, as husband. He must reduce his wife's *choses in action* in her life-time, and thereby become possessed of the same in his own right, or he will afterwards, as administrator, if he recovers them, be liable to account to her next of kin for the same. In the case from 4 Rawle's Rep. 468, it was held that a deed from a husband conveying the wife's *choses in action* to trustees for the benefit of the wife and child, though not a reduction of such *choses in action* into possession, nevertheless passes not only the interest of the husband, but that of the wife also to the trustees,

upon the trusts declared in the deed. Consequently, upon the death of the husband, such *choses in action* do not survive to the wife, so as to entitle a second husband to claim them as her property. Chief Justice Gibson, after stating the objection to this settlement, rested on a former decision of their court, requiring a valuable consideration for the contract of equitable assignment, in order to bar the wife's survivorship, asks the question, "Would a chancellor withhold his assistance from what this palpably is, a settlement for the advantage of the wife herself, and in restraint of the husband's power to squander the fragments of her estate?" He continues : " This is a reasonable settlement out of the wife's own property, on herself and child ; and it would be a narrow construction of the marital powers of the husband, that would suffer the trust to fail for an omission to reduce the fund into actual possession, before the execution of the instrument." The balance of the opinion of this learned judge, is outside of the case ; it was obviously prepared to shake the authority of the decisions of English chancellors and Masters of the Rolls, in the cases of *Purdew* v. *Jackson, Hornsby* v. *Lee*, and *Honner* v. *Morton.* I am still satisfied with the decisions of those cases, and consider them best calculated to protect the wife and children—the very thing that Chief Justice Gibson was doing in this case—for which he had to condemn the narrow policy which required the husband to reduce into possession the wife's *choses in action,* before he could dispose of them so as to cut off the wife's right of survivorship. It is admitted that this conveyance of the husband was not a reduction into possession. Then the law will not give him power to dispose of the wife's *choses in action,* not reduced into his possession during coverture, so as to bar her right of survivorship. All the reasoning on this subject, when not founded on the principles of the law concerning the husband's authority over his wife's *choses in action,* however ingenious, must give way before the solid learning and plain common-sense view of the modern English chancery cases on the same subject.

I have not deemed it necessary to review all the cases cited by the counsel for the parties in this case. Upon an examination of them, my mind has come to the conclusion, without a doubt, that the deed of the husband and wife in this case has not the power, under the circumstances of the case, to bar the wife's right of survivorship. I am also equally well satisfied that, if the deed had that effect as an assignment from the husband and wife to a particular assignee for value, yet that such assignee must make reasonable provision for the wife, and would take the *choses in action* liable to this provision for the wife. Here, the husband and wife, by deed, sold the wife's interest in the dower estate of the wife's mother. The mother was still living after this sale, and before the mother's death the plaintiff obtained a sentence of divorce from her husband. The mother died after this divorce. Now, it is plainly to be seen that, if this divorce operates as the death of the husband would, then this *chose in action* never was capable of being reduced in his life-time into his possession. The mother, the tenant for life, had the sole and exclusive right of possession, and had also the actual possession, until after the civil death of the husband of her daughter. Then, the husband, during his life, being unable to reduce this property of his wife into actual possession, shall his deed to his assignee have the effect of making such actual possession in him ? His assignment of a *chose in action*, which could immediately be reduced into possession, may be considered as a constructive reduction into possession, because that immediately follows, the property is changed, and the wife's right divested. But where neither the wife nor husband, nor their assignee, have the power to reduce into possession the *choses* of the wife, until an event must take place in future, we think that it would be absurd to say that, in such a case, the assignment of husband and wife, for value, did reduce such *chose in action* into possession ; and the assignee would take it, were the husband to die before the happening of such future event, freed from the wife's right of survivorship. To call the assignment, in this case, a constructive

reduction into possession—a possession in some sense—tantamount to posssession is to suppose two things to be the same which are directly opposite to each other ; it is to suppose a *a chose in action* to be a thing constructively reduced into possession ; it cannot be both ; no construction can make things opposite in their nature to be the same things.

Wherever such assignments have been considered reduction into possession, the *choses* assigned were capable of being immediately possessed ; there was an immediate right of possession, which was or could be soon completed or followed by ac-actual possession, (as a judgment, but before execution ;) in these, the property may be considered as changed, and the condition substantially fulfilled. Sir Thomas Plumer's opinion, in *Purdew* v. *Jackson*, (p. 70 :) " The wife's reversionary interest is incapable, in this case, of being reduced into the possession of the husband, until the death of the tenant for life ; the death, then, of the husband happening before the death of the tenant for life, his previous assignment cannot affect the wife's right as survivor."

We do not consider this reversionary interest in the wife as a vested present interest in possession, neither in her nor in her husband ; and we think the authorities amply sustain us in this opinion, notwithstanding the Virginia decisions to the contrary. We cannot see how, if the reversionary interest of the wife in the slaves belonging to her mother, as her dower property, be a vested present interest in her husband, so that he can sell it, and destroy thereby the wife's survivorship, why he cannot will it away, and destroy her right by will. If he were to reduce her *choses in action* into his possession, he might will them away, because they become his absolutely by such reduction ; the property becomes changed by being turned into his possession. He can will away such property ; why not will away a present vested interest in him to his wife's reversionary interest ? Is it because this interest ceases at his death, and being no will until his death, when it becomes a will, there is no interest for it to operate on ? And yet he can sell, and after his

death, the assignee will hold against his wife's right of survivorship, though the particular estate did not end until after her husband's death! But I will pursue this subject no further, being satisfied that the law is with the plaintiff in this case.

There now remains but one further question, which is, whether the plaintiff's petition states sufficient facts to warrant the judgment of the court below.

The plaintiff's petition shows that all the property which was given to her by way of advancement, and all which she got from her father's estate has been squandered by her husband; that she is left alone, with several small children, to depend upon her own personal labor for a support; that the defendant, Simmons, has, by some means or other, got several of the slaves which came to her from her father's estate; and that he will endeavor to get the remainder of her estate, which comes to her from her mother's death, out of her mother's dower; that, before her mother's death, she was divorced from her husband; that Simmons claims this property under the contract made by her husband and herself, before she was entitled to have the interest in her mother's dower estate. We are satisfied the petition states grounds sufficient for the interference of the court below, and that, in right and justice, the defendant should be prohibited and restrained from interfering with the fragments of the estate of this poor woman.

Upon the whole case, we are satisfied the law has been properly declared, and the judgment of the court below is affirmed; Judge Scott concurring. Judge Leonard was not on the bench when this cause was argued.