### (Surrogate's Court, Westchester County.   June, 1903.)

**1. SURROGATE—JURISDICTION—TEMPORARY ADMINISTRATOR.**

Where a decree for the probate of a will has been reversed by the Court of Appeals, the surrogate has jurisdiction, under Code Civ. Proc. § 2670, providing that when, for any cause, delay necessarily occurs in the granting of letters testamentary or letters of administration or in probating a will, to appoint a temporary administrator, and may make such an appointment, though letters testamentary had been issued at the time of the probate.

**2. APPEAL—REVERSAL—REMITTITUR.**

Where the Court of Appeals reverses a decree for the probate of a will, the remittitur is properly filed in the Surrogate's Court, and the order making the judgment of the Court of Appeals the judgment of the Surrogate's Court is properly entered in such court.

**3. SAME—NEW TRIAL.**

Where a decree for the probate of a will has been reversed by the Court of Appeals upon new trial, the proponent must prove anew the making of the will.

In the Matter of the Probate of the Will of Robert E. Hopkins. Motion to vacate orders of court.   Denied.

Clarence S. Davison (Charles Blandy, of counsel), for petitioner.

Joseph W. Middlebrook, special guardian, opposed.

SILKMAN, S.   This is an application made by Fanny W. Hopkins, an executrix, devisee, and legatee named in the will of Robert E. Hopkins, deceased, to vacate certain orders of this court:   (1) The order or judgment of November 15, 1902, entered upon the remittitur of the Court of Appeals, making the judgment of that court the judgment of this court, and reversing the former decree of this court admitting the will to probate.   (2) The order of December 6, 1902, appointing the Farmers' Loan & Trust Company temporary administrator of the estate of decedent.   (3) The order of January 19, 1903, appointing Fanny W. Hopkins temporary administratrix in the place of the Farmers' Loan & Trust Company, resigned.   The grounds of the motion are:   (1) That this court was without jurisdiction to make such orders, and (2) that the subsequent proceedings upon the remittitur rendered them improper and unnecessary.   Both parties at the outset raise objections not going to the merits of the motion.   The petitioner, after bringing the special guardian appointed upon the probate of the will into court by service of the order to show cause, objects to his being heard, upon the ground that he is functus officio.   On the other hand, the special guardian questions the right of the court to consider the application, upon the ground that it was brought on for hearing upon an order to show cause granted by the county judge, when it does not appear from the papers that he had jurisdiction to issue it.

The amount of the estate is so large, and an early end of litigation so desirable, that I think it wiser to meet the serious legal questions involved in the motion.   The paper purporting to be the will of Robert E. Hopkins was offered for probate by his widow, Fanny W. Hopkins, who was named therein as an executrix.   There was but

one heir at law and next of kin to be cited, testator's infant son, Robert E. Hopkins, Jr. To guard and protect the interests of this infant, the court appointed Joseph W. Middlebrook as special guardian. The signature to the paper propounded had apparently been canceled by the drawing of numerous vertical penmarks through it. The special guardian, in a conscientious performance of his duty, filed objections, and claimed that the will had been canceled by the testator in his lifetime. The issue was tried before this court, and by decree entered on the 17th of August, 1901, the objections of the special guardian were overruled, and the will was admitted to probate. 72 N. Y. Supp. 415. The decree provided that letters testamentary issue to those named as executors who should appear and qualify. On the same day letters were issued to said Fanny W. Hopkins. Thereafter, and on or about the 12th of September, 1901, the special guardian appealed from said decree admitting the will to probate and granting letters testamentary to the Appellate Division of the Supreme Court, and thereafter, and on the 6th day of June, 1902, by an order of said Appellate Division dated that day, the decree of the surrogate was affirmed (77 N. Y. Supp. 179), and, as provided by section 2585 of the Code, a certified copy of the record of the Appellate Division, together with a certified copy of the order of the Appellate Division, was remitted to this court, and filed therein, and on the 2d day of July, 1902, upon the application of the present petitioner, an order was made making the order of the Appellate Division the order of this court, and in terms affirming the decree of August 17, 1901. From this order of affirmance the special guardian appealed to the Court of Appeals, which court did, after hearing the appeal, as appears by its remittitur dated November 12, 1902, order and adjudge "that the order of the Appellate Division of the Supreme Court appealed from herein, and the decree of the surrogate, be, and the same hereby are, reversed, and proceedings remitted to Westchester county for trial before a jury in the Supreme Court to determine whether the will in question was revoked by testator"; and did also direct that the record be remitted "into the Surrogate's Court of Westchester county before the surrogate thereof, according to the form of the statute in such case made and provided, to be enforced according to law, and which record now remains in the said Surrogate's Court of Westchester county before the surrogate thereof," etc. This remittitur the special guardian filed in this court, and entered the order of November 15, 1902, complained of, which made the judgment of the Court of Appeals the judgment of this court, and reversed the decree which granted probate and the issuance of letters testamentary. Thereafter Mrs. Hopkins applied to this court, upon notice to all parties, for the appointment of a temporary administrator. Upon such application, by an order dated the 6th day of December, 1902, also complained of, the Farmers' Loan & Trust Company was appointed. Before entering upon the discharge of its duties as such temporary administrator, said Farmers' Loan & Trust Company resigned, and by an order of this court, dated the 17th day of January, 1903, upon her own application, Mrs. Hopkins was appointed in its place. She qualified, and gave a bond in the penalty

of $2,000,000 for the faithful performance of her duties as such temporary administratrix.

It is now claimed on behalf of Mrs. Hopkins that she was executrix all the time; that the order of the Court of Appeals reversing the order of the Appellate Division, and reversing the decree of probate and granting letters testamentary, did not disturb her right to perform the duties of the office of executrix; that she had a right to continue in the performance thereof; and that this court had no jurisdiction to make the appointment of a temporary administrator, although made upon her own application. Subsequent to the filing of the remittitur of the Court of Appeals in this court, and the entry in this court of the judgment thereon, the parties presented the remittitur before the Trial Term of the Supreme Court held in and for Westchester county in the month of March, 1903, and proceeded to try the issue as to whether the instrument offered for probate was revoked by the testator. The jury brought in a verdict in favor of the proponent upon that issue. A certificate has been filed in this court, under the hand and seal of the clerk of the Supreme Court, certifying to the proceedings of the trial. Then the motion now under consideration was made.

The first order or judgment which the petitioner desires to have vacated is that dated November 15, 1902, entered upon the remittitur of the Court of Appeals, making the determination of that court the judgment of this court, and reversing the former decree of this court admitting the will to probate. The petitioner claims that such remittitur is improperly in this court, and that it and all proceedings thereunder should be in the Supreme Court. It is quite apparent that counsel have overlooked the change in practice since the adoption of the Constitution in 1894. The Legislature of 1895, upon the adoption of that Constitution, amended the sections of the Code governing the decision of appeals taken to the Appellate Division and Appellate Terms of the Supreme Court. These sections are 1345, 1353, 1355, and 2585. It is the last-named section which governs appeals to the Appellate Division taken from a Surrogate's Court, and, as amended, materially changes the practice. As adopted in 1880, and as it continued unamended until 1895, it required that the remittitur of the Court of Appeals be filed in the county clerk's office of the county from whose surrogate's order the appeal was taken, in the same manner and with the same effect as appeals governed by section 1345 as it then existed. That section prescribed that the certified copy of the order of the General Term, and the record sent down with it, should constitute a judgment roll, and remain in the office of the county clerk. But all this has been changed since the amendment of 1895, taking effect January 1, 1896, since which time section 2585 has provided as follows:

"In the Appellate Division of the Supreme Court the order made upon an appeal from a decree or an order of a surrogate's court must be entered with the clerk of the Appellate Division, and a certified copy thereof annexed to the papers transmitted from the court below upon which the appeal was heard, must be transmitted to the court from which the appeal was taken, and the court below shall enter the judgment or order necessary to carry the determination of the Appellate Division into effect."

There is no question as to the power of the Supreme Court while the proceeding is in the Appellate Division of that court. The power and jurisdiction of that court is beyond that possessed by the surrogate. Section 2586 provides:

"Where an appeal is taken upon the facts, the appellate court has the same power to decide the questions of fact, which the surrogate had; and it may, in its discretion, receive further testimony or documentary evidence, and appoint a referee."

Nevertheless, it would seem that by the amendment of 1895 the practice has been made to conform to the practice which has always existed in the case of the Court of Appeals, and just as the Court of Appeals loses all jurisdiction when it sends down its remittitur to the court below, and can resume jurisdiction only by recalling that remittitur, in the same manner the Appellate Division loses its jurisdiction when it sends down its remittitur. In this case the remittitur of the Appellate Division was filed in this court in June, 1902, so that from that time the probate proceeding has not in any sense whatever been in the Supreme Court. The cases cited by counsel for the petitioner, Matter of Campbell, 48 Hun, 417, 1 N. Y. Supp. 231, and Matter of Patterson, 63 Hun, 529, 18 N. Y. Supp. 499, by reason of the change in the practice, have lost their application. The proceeding is back in this court by express direction of the Court of Appeals, and apparently in accordance with the present practice. The judgment of the Court of Appeals has been made the judgment of this court, and I am satisfied that no error has been committed in that regard. See Matter of Laudy, 35 App. Div. 542, 55 N. Y. Supp. 98; Matter of Murphy, 79 App. Div. 541, 81 N. Y. Supp. 101.

We now meet this difficulty: The proponent comes into court with a certificate of the clerk of the Supreme Court certifying to the result of the trial before a jury of the issue specified by the Court of Appeals. The original probate decree has been reversed, and it would seem that, before a new decree can be entered, formal proof will be necessary in the Surrogate's Court as to the factum of the will. The Legislature has not disclosed any intention that the testimony or proof originally taken shall stand for any purpose. I am of opinion that upon an absolute reversal all proofs must be taken de novo.

There is another serious question, and while not necessarily involved, in view of the conclusion arrived at upon this motion, nevertheless it is of sufficient importance to be considered at this time. The Appellate Division affirms the probate decree, and the Court of Appeals reverses the order of the Appellate Division, and the surrogate's decree admitting the will to probate. The Court of Appeals has not the general jurisdiction of probate matters as is conferred upon the Appellate Division by section 2586 of the Code, which section clearly relates to the Appellate Division alone, for the reason that the latter court is the only court to which an appeal can be taken upon the facts. The jurisdiction of the Court of Appeals is limited by section 191 of the Code, subd. 3, to a review of questions of law only. By section 2587 of the Code, relative to appeals from the Surrogate's Court, we find it provided, that—

"The Appellate Court may reverse, affirm, or modify the order appealed from and each intermediate order specified in the notice of appeal which it is au-

thorized by law to review, and as to any or all of the parties, and it may if necessary or proper, grant a new trial or hearing."

Section 2588, following, then provides:

"Where the reversal or modification of a decree by the appellate court is founded upon a question of fact, the appellate court must, if the appeal was taken from a decree made upon a petition to admit a will to probate, or to revoke the probate of a will, make an order, directing the trial by a jury, of the material questions of fact, arising upon the issues between the parties."

I can find no further authority in the Appellate Court other than to reverse, affirm, or modify the decree or order of the Surrogate's Court appealed from, to grant a new trial, and, if the reversal is upon a question of fact upon an appeal from a decree admitting a will to probate, to direct the trial of the issue before a jury. The Court of Appeals must be assumed to have reversed the probate decree upon a question of law, and, that being so, can such new trial be had before a jury? Should it not have been directed before the surrogate? In the Laudy Case, which was in the Court of Appeals on several occasions, that court first affirmed the order of the General Term which reversed the decree of the surrogate denying probate, and directed the surrogate to admit the will to probate (147 N. Y. 699, 42 N. E. 724), but upon a reargument the court modified the order of the General Term by directing a trial of the issue involved before a jury (148 N. Y. 403, 42 N. E. 1061). When the case was again before the court (161 N. Y. 429, 55 N. E. 914), the facts were discussed. By examining the case, we find that it arose prior to December 31, 1895, and the limit to the jurisdiction of the court contained in section 191 of the Code does not apply to cases in which, under the provisions of the law existing on that day, appeals might be taken to the Court of Appeals. Whether or no the Court of Appeals can modify an order of affirmance by directing a trial before a jury of a question of fact, is for that court to decide upon an application to amend its remittitur.

We are now brought to the consideration of the order of December 6, 1902, appointing the Farmers' Loan & Trust Company temporary administrator, and the order of January 19, 1903, appointing Mrs. Hopkins in the place and stead of the Farmers' Loan & Trust Company, resigned. Both of these orders were entered upon the application of Mrs. Hopkins, who now seeks to have them set aside. The special guardian argues that Mrs. Hopkins is estopped from attacking the orders, they having been made upon her application, but in this suggestion I do not think there is merit. If the court was without jurisdiction, its orders must fall upon the assault of any one in interest. The jurisdiction of the court to appoint a temporary administrator is contained in the following language (Code, § 2670):

"When for any cause delay necessarily occurs in the granting of letters testamentary or letters of administration, or in probating a will."

Either one of three things must occur to give the court jurisdiction to entertain the application: Necessary delay in granting letters testamentary, necessary delay in granting letters of administration, or necessary delay in probating the will. In this case it was the fact of delay in probating the will, due to the reversal of the pro-

bate decree by the Court of Appeals, which gave the court jurisdiction. We may concede, as contended for by the counsel for the petitioner, that the Surrogate's Court is of limited jurisdiction and has no inherent power, and those powers which it exercises must rest upon legislative enactment. Duryea v. Mackey, 151 N. Y. 204, 45 N. E. 458.

Counsel for petitioner insist that the case of Thomson v. Tracy, 60 N. Y. 174, is conclusive upon the point that the reversal of the decree admitting the will to probate did not necessarily operate to destroy the authority of the executors acting under letters testamentary. That was a case where letters were issued to the defendants, as executors of James B. Taylor, under a will admitted to probate, after contest, in March, 1871. At and prior to that time, in cases of appeal from a probate decree, the issuance of letters testamentary were ipso facto stayed, but on April 19, 1871, the Legislature passed an act (Laws 1871, p. 1303, c. 603) which authorized the surrogate, in case of appeal, to issue such letters testamentary with limited power and authority. The surrogate, upon the passage of that act, issued letters testamentary to the defendants. Thomson, the plaintiff, whose claim upon promissory notes the defendants refused to pay or consent to refer, brought suit, and, pending suit, the Court of Appeals reversed the order of the General Term, which had affirmed the order of the surrogate upon the facts, and the case was remanded for trial by a jury as to the genuineness of the will. The defendants by supplemental answer set up the reversal of the probate decree, which defense the Supreme Court declined to consider, and the Court of Appeals affirmed the Supreme Court. While that case might be authority for all that the petitioner contends had the act of 1871 remained the law as originally passed, it cannot under the changed conditions be so regarded. The law of 1871 has been to some extent incorporated in section 2582 of the Code, but, in framing that section of the Code, the Legislature added a significant paragraph which does not appear in the law of 1871. This paragraph provides:

"And in case letters shall have been issued before such appeal the executor or administrator, on a like order of the surrogate, may exercise the powers and authority, subject to the duties, liabilities and exceptions above provided."

Showing clearly that the Legislature did not intend that the letters testamentary granted to an executor should be operative, or evidence of authority, unless by express order of the surrogate. Such an order does not appear to have been made in this case. The appeal itself enjoined the executrix, and, having been given no express authority by the surrogate, the reversal of the probate decree made the injunction permanent until a new probate decree shall have been entered. This seems to be the true significance of section 2582, and it is made more evident by section 2691, relating to the effect of letters issued out of the Surrogate's Court, and we find them to be as "conclusive evidence of the authority of the persons to whom they are granted, until the decree granting them is reversed upon appeal, or the letters are revoked as prescribed in this chapter." It is undoubtedly the law that a person named in a will as executor, by virtue of such an appointment, and without letters from the Surrogate's

Court, has certain duties to perform, and is under certain obligations to preserve the estate of the testator. This authority flows from the will itself. Letters testamentary founded upon the probate of the will do not create the executor nor confer title upon him, but are the authentic evidence of the power conferred by the will, and which existed before they were granted. Hartnett v. Wandell, 60 N. Y. 346, 19 Am. Rep. 194. The property of the testator is in the legal custody of the executor of the will, appointed before probate, and he may exercise many of the powers of an owner over it. People ex rel. Gould v. Barker, 150 N. Y. 52, 44 N. E. 785. The object and intention, however, of the Legislature in authorizing the appointment of a temporary administrator was the preservation of the estate, and protection of the interests of those who might be ultimately entitled thereto. The law was intended to prevent waste, loss, or misappropriation, and the authority of the surrogate should not be limited where either of the three conditions exist which authorize the appointment of a temporary administrator. It may be that the paper propounded as the will may never be again probated, and we would then have, if the contention of petitioner were correct, an estate administered, without security, by one who had only the authority of letters issued under a discredited decree. In the present case, delay in the probate of the will did exist.

Counsel have stated that a large portion of this valuable estate was invested in enterprises of uncertain character. It was most appropriate that, until it should be determined who would be ultimately entitled to the property, or the shares therein should be ultimately fixed, the integrity of the estate should be preserved by the giving of security. This was done. Mrs. Hopkins, an executor named in the will, was, upon her own application, appointed temporary administrator. She has given a bond in the penalty of $2,000,000 for the faithful discharge of her duties as such. The duties she may perform as temporary administrator under the orders of the surrogate are larger than those which she might perform under limited letters testamentary.

I am satisfied that this court had jurisdiction to make the appointment. I am also satisfied that the only advantage to petitioner in having the order appointing her vacated will be an escape from liability to cause an inventory to be made and filed, and to account for the property which she may have received in order to discharge her surety. The motion must be denied, with costs.

Motion denied, with costs.