*Leakey, adm'r, &c.* vs. *Maupin.*

LEAKEY, ADM'R, &c. vs. MAUPIN.

1. A husband is not entitled under our statutes to the *choses in action* of his wife, not reduced into possession during her life. As where the wife being entitled to a distributive share of her father's estate, died before the same was received by the husband—he is not entitled to such share, but the same will go to her heirs.

2. Although the husband is entitled to administer upon his wife's estate, and as such administrator to sue for and recover her *choses in action* which had not been reduced into possession by the husband during the life of the wife, yet he will hold them to be distributed to his wife's heirs.

## APPEAL from Howard Circuit Court.

CLARK, *for Appellant, insists:*

1st. By the common law the personal estate of all intestates vested in the administrator without any charge of distribution, which remained until the enactment of the statute of 22 and 23 of Car. 2nd, after that statute all estates were charged with distribution except estates acquired by the husband as administrator of his wife, which were expressly exempted. Hence by the common law, as well as under the statute of Car. 2nd, the husband is entitled to administer, and not being required to distribute, obtains and takes his wife's estate as her administrator; but our statute of descents and distributions requires that all estates, without any exception, administered upon, shall descend and be distributed according to the provisions of that act. Admitting then that the personal estate of the wife at her death becomes the husband's, as her administrator he holds the same as any other administrator charged with distribution under our statute, the provisions of which exclude him where there are any kindred;—the principles involved in this case were decided by this Court in the case of Pratt vs. Wright, administrator, reported in the 5th vol. Mo. Reps. 192. In aid of the views here taken, we also refer to 2nd Williams, Ex'r, 473—1061.

2nd. It is also insisted that in this country all estates (including *Femme Coverts,*) at the death of the intestate vests in their administrator for the use and benefit of those entitled to distribution, and the same must be distributed to the next of kin as pointed out in the statute; then in this case, at the death of the ancestor Leakey, his estate vested in his administrator charged with distribution to the next of kin including the appellee's wife, but she having died intestate without leaving issue, before her interest was distributed the same in the hands of her father's administrator would under our statute as well as by the rules of equity be distributed to her kindred, her husband having no right in such an interest until reduced to possession, whether as a chose in action or an interest acquired otherwise. See our statute of descents and distributions, page 421, Digest.

3rd. In England, as well as in this State, the administration is always granted to the one having the interest in the estate: in this case, at the death of Mrs. Maupin, her husband not being entitled to a distributive share in her estate not reduced to possession, would not be entitled under our statute to administration in preference to her kindred, but if he was, he must distribute the estate according to our statute, and if so he is excluded; he takes here if at all under our statute, while in England, and many of the States of this Union, he takes under the common law and the act of Car. 2nd. See act of distribution, Digest, 421. 1st Williams on Ex'r, 267—268—269—270. 5th Mo. Reps. 192.

DAVIS, *for Appellee, insists :*

·1st. Upon the death of Jeremiah Leakey, his personal as well as real estate *descended* and did not go to the ordinary or legal representatives as at common law. See the case of Wright vs. Pratte, 5 Mo. Reps. 192; also the statute of descents and distributions of 1835, page ––. The right of inheritance in the personalty of the deceased did not remain in abeyance; but vested in his heirs *immediately* upon his death, subject to the rights of creditors and expense of administration, as enjoined by other laws upon the administration.

2nd. The right of inheritance did not vest in Sarah Maupin, the daughter of Jeremiah Leakey, on the death of her father, but in her husband, Rice G. Maupin; she, being at that time a married woman, cannot take. See Toller on Executors, 225. 4 Dana's Rep. 333.

3rd. Rice G. Maupin's interest in said inheritance is not derived through the statute of descents and distributions of this State, but depends upon principles of the common law by virtue of his marriage. See 6 Johns. Reps. 119.

4th. A *chose in action* belonging to the wife *before* marriage does not belong to the husband absolutely until he reduces it to possession, but a chose in action accruing to the wife *during* coverture belongs to the husband absolutely. 6 Johns. Reps. 119; 4 Dana, 333; 1 J. J. Marshall, 169; 3 Littell, 281.

SCOTT, J., *delivered the opinion of the Court.*

This was a proceeding commenced in the County Court of Howard County by Maupin the appellee, to obtain from J. J. Leakey, administrator of Jeremiah Leakey, deceased, a distributive share in right of his wife of the estate of the said Jeremiah Leakey. In 1841, Maupin married S. Leakey, a daughter of the said Jeremiah, who died intestate in March, 1842. In October, 1842, Sarah Leakey, the wife of Maupin the appellee, departed this life without issue, leaving heirs preferred to her husband as distributee under our statute of descents and distributions. No distribution of the estate of her deceased father had been made at the time of the death of Sarah Leakey. The County Court refused Maupin a distributive share of said estate in right of his deceased wife, and on an appeal to the Circuit Court that judgment was reversed, and the cause brought here.

The only question arising under this state of facts is whether Maupin, the husband of Sarah Leakey, deceased, or her heirs, are entitled to her distributive share in the estate of her deceased father?

If this was a question depending upon the English law for its solution, it could not admit of any doubt. By that law the right of the husband as administrator to his deceased wife's choses in action not reduced into possession during the coverture would be unquestionable, but as some of the provisions of the English law in relation to this subject have been ·omitted and others varying from them have been incorporated into our

24

system of laws, it becomes a question whether a husband under our law is entitled to his wife's choses in action not reduced into his possession during her life time, she leaving heirs preferred to the husband under our statute of distribution.

In ancient times when a man died intestate, the King as *parens patriæ*, took possession of his effects to be employed in defraying the expenses of his burial, paying his debts, and for the support of his wife and children or other kin. The execution of this trust was devolved on the clergy, and many abuses growing out of their conduct in relation to it, the statute of Westminster, 2, 13 Ed. I., which was said to be in affirmance of the common law, enacted that the ordinary should pay the debts of the intestate as far as his goods extended, in the same manner the executors were bound in case the deceased had left a will. But the residuum after payment of debts remained in the hands of the ordinary to be applied to any purposes his conscience might approve. Great abuses arising under the exercise of this power, the Legislature again interposed, and by the statute of 31st Ed. III., required the ordinary to depute the next and most lawful friends of the intestate to administer his goods. This is the origin of administrations in England. The statute 21st, Hen. VIII., enacted that administration might be granted by the ordinary to the widow of the deceased or his next of kin, or both in his discretion. In none of the statutes on the subject of administration is express mention made of the right of the husband to administer on his deceased wife's estate. His right was always unquestioned, and the only dispute was as to the source of that right; some holding that he held it under the statute 31st, Ed. III., as the next and most lawful friend of his wife; others, that he derived it from the common law, and that the husband *jure mariti* was entitled to administer on his deceased wife's effects, but the right being established and admitted on all hands, its source was a matter of no importance.

As the appointment of an executor was by the common law a gift to him of the residuum after the payment of funeral expenses and the debts, as a recompense for his trouble for administering, so the administrator coming in the place of the executor had the whole personal estate of the intestate after the payment of debts. 2 Bac. 72, the writ *de rationabile parte bonorum* to which the wife and children were entitled being grounded on the customs of London and York, and some other places. 3 Thos. Coke, 317. The hardship of this privilege upon the next of kin of the intestate, was the occasion of making the statute of 22 and 23 Chas. II., Cap. 10, which compelled the administrator, after the payment

of funeral charges, debts and all expenses, to distribute the remainder of the personal estate to the wife and children and children's children, if any there be, or otherwise to the next of kindred to the dead person.

We have seen that the husband was entitled to administration on his deceased wife's estate, and like all other administrators, had by the common law, exclusive enjoyment of the residuum after the payment of debts. Doubts arose under the statute of Charles, before recited, whether the husband, like all other administrators, was not compelled to make distribution among the next of kin of the wife; to remove these doubts the 25th section was engrafted on the statute of frauds and perjuries, 29 Chas. II., which provided that the act of 22 and 23 of Chas. II., Cap. 10, nor any thing therein contained shall be construed to extend to the estates of *Femme Coverts* that shall die intestate, but that their husbands may demand and have administration of their rights, credits, and other personal estates, and recover and enjoy the same as they might have done before the making of the said act."

We have not adopted into our system of laws this section, but on the contrary, it is provided by the statute of descents and distributions, §3, that if there be no children nor their descendants, father, mother, brother nor sister, nor their descendants, nor any paternal or maternal kindred capable of inheriting, the whole shall go to the wife or *husband* of the intestate. From the omission of a provision similar to that contained in the 25th section of the act of 29th, Chas. II., and the insertion of a provision that the husband should only receive his deceased wife's estate in the event of there being no children, father, mother, brother, sister, nor any maternal nor paternal kindred capable of taking, the inference would seem irresistible that it was not the intention of the Legislature that the husband should receive his wife's estate and not account for it as other administrators.

In order to surmount the obstacles to his claim presented by the dissimilarity between ours and the English system of laws in relation to this subject, it was contended by the appellee that there was a distinction between choses in action belonging to the wife at the time of marriage and those which accrued to her during coverture; that the former belong to the husband *sub modo*, provided that he reduces them to possession during coverture, otherwise, if the wife survive him, she will be entitled to them, but that the latter are an absolute gift to the husband, and in the event of the survivorship of the wife would belong to her. It must be confessed that the cases read from the Kentucky reports, 4 Dana, 333, and 1 J. J. Marshall, 160, 3 Little, 281, would seem to give

some sanction to the distinction, but it is a little remarkable that while these cases hold that choses in action accruing to the wife during coverture, vest absolutely in the husband, yet they admit that if the wife survives the husband she will be entitled to them, and not his representatives ; now nothing is clearer than that the property of the wife which vests in the husband absolutely, in the event of his death will belong to his representatives and not to the wife.    There is therefore some inconsistency in the propositions.

Marriage is by law an unqualified gift to the husband of all the personal estate of the wife in her possession at the time of its taking place, and if he should die an hour after the marriage, having received a large personal estate from the wife, all of that estate except what our law allows to her as dower, would go to the kindred of the husband and not to the wife.    But as to choses in action or mere rights to receive money or property from another the law only gives the husband a qualified right to them, viz : on condition that he reduces them to possession during coverture, and if he fails to do this, if the wife survive she will be entitled to them.    This principle is applicable as well to choses belonging to the wife at the time of marriage as to those which accrue to her during coverture.    The distinction between the two classes of choses is this that in a suit to recover the former the wife must be joined with the husband,—in a suit for the latter the husband may join his wife or not at his election, if he sues alone and recovers judgment it is an election to have the chattel in his own right freed from the right of survivorship in the wife, if he joins her in the suit, her right of survivorship still continues after judgment.

That the foregoing is the only distinction between choses in action belonging to the wife at the time of marriage and those which accrue to her during coverture, may be shown by a great weight of authority Chancellor Kent, 2 Com. 235, asserts the doctrine as though there was no doubt in relation to it, and in the case of Schuyler vs. Hoyle, Johns. C. 196, it is maintained and English cases cited showing that choses in action existing both at the time of marriage and those accruing to the wife during coverture are only conditional gifts to the husband.    The principle is asserted in Garforth vs. Bradley, 2 Ves. Sen and in Richards vs. Richards, 2 Barn. & Adol. 452.    Williams in his work on Executors, 605, says, marriage is only a qualified gift to the husband of the wife's choses in action, viz : upon condition that he reduce them into possession during its continuance; for if he happen die before his wife, without having reduced such property into possession

she and not his representatives will be entitled to it; accordingly, the general rule of law is, that choses in action which are given either *before* or *after* marriage survive to her after the death of her husband, provided he has not reduced them into possession; but with this distinction that as to those which come during the coverture, the husband may for them bring an action in his own name; may disagree to the interest of his wife, and that recovering them in his own name is equal to reducing them into possession.

Most of the States of the Union have adopted the English law, and exempted the husband as administrator from the burthen of making distribution of his deceased wife's effects, but in a case in Alabama similar to this, owing to the omission in her code of a provision like that of the 25th section of 29, Chas. II., it was held by her Supreme Court that a husband was not entitled to a portion of his deceased wife's estate not reduced into possession during her life time. Bibb vs. McKinley, et al. 9 Ala. 636.

We are inclined to the opinion that the 1st section of the act relative to descents and distributions which directs " that when any person shall die intestate as to any real or personal estate, it shall descend and be distributed in parceny," &c., will not warrant the construction put upon it by the appellee. The words *descend and be distributed* are not to be applied both to the real and personal estate, the word *descend* must be regarded as applicable to the real estate, and the words *to be distributed* to the personal estate; as if the section read, the real estate shall descend, and the personal estate shall be distributed, &c. To hold that the personal estate on the death of an intestate descended to his heirs, would be to overturn all our notions in regard to the administration of such property, and would be productive of endless confusion in administering estates, but even if the right to the personal estate did descend to Maupin immediately on the death of his father-in-law, still it was a mere right. The possession rightfully went to the administrator, and he had not parted with that possession at the death of Maupin's wife.

In this case Maupin claimed as husband and not as administrator of his wife. Our statute gives the right of administering on his deceased wife's estate to the husband, and had Maupin claimed a distributive share of J. Leakey's estate as administrator of his wife, he would have been entitled to recover, but for the reasons given before, he would have held the amount received as trustee for his wife's next of kin.

The other Judges concurring, the judgment below is reversed, and it is considered that Maupin take nothing by his plaint, and that the appellant go hence without day and recover his costs.