[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 176 
The defendants ask a reversal of the judgment in this action upon two grounds: First that letters testamentary having been issued to them, only in pursuance of chapter 603 of the Laws of 1871, they were not authorized *Page 177 
to pay debts of the testator, and, consequently, were not liable to be sued for such debts. And, secondly, that the decree admitting the will to probate having been reversed by the judgment of this court, and a trial by jury having been ordered, the authority and office of the defendants, as executors, ceased from the time of such reversal, and the action against them, as such executors, abated.
The solution of the first question depends upon the construction of the act of 1871. That act provides, that "appeals, when taken from the decree or decision of a Surrogate's Court, declaring the validity of a will, and admitting the same to probate, shall not stay the issuing of letters testamentary to the executors, if, in the opinion of the surrogate, the protection and preservation of the estate of the deceased require the issuing of such letters; but such letters shall not confer power upon the executor or executors named in the will to sell real estate, pay legacies, or distribute the effects of the testator, until the final determination of such appeals."
It will be observed that the only limitations upon the powers of executors to whom letters are issued under this act are, that they shall not pay legacies, sell real estate, or distribute the effects of the testator. It is for the surrogate to determine whether, in his opinion, the protection and preservation of the estate require the issuing of such letters. His determination of that question is a necessary preliminary. It is a consideration to guide him in deciding whether or not to issue the letters, but not a limitation upon the powers of the executors. When the letters are granted they possess all the powers and are subject to all the duties and liabilities of executors, except as expressly restricted in the then specified particulars.
The restriction relied upon by the appellants, as precluding creditors from bringing actions against them for the purpose of establishing their claims against the estate, is that which prohibits the executors from distributing the effects of the testator. It is contended, on the part of the respondents, that the distribution here referred to is the distribution directed by the *Page 178 
will; and that the sole object of the restriction is to prevent the execution of the will, by paying legacies, selling land, and dividing the personal estate among the beneficiaries under the will, pending the appeal, and to leave all matters depending upon the validity of the will in statu quo until the final determination of the appeal, but not to restrain the executors from performing those acts which must be done for the liquidation of the estate, irrespective of the provisions of the will, and which would not be disturbed by the will being pronounced invalid, such as collecting in the assets, ascertaining and liquidating claims of creditors, and paying them. On the other hand, it is claimed by the appellants, that the prohibition against distributing the effects of the testator restrains them from paying out any of the funds of the estate, even to creditors.
Assuming, for the moment, that the appellants were correct in their interpretation of the term "distribution," it is by no means a necessary consequence that an action could not be brought against them by a creditor for the purpose of obtaining a judgment establishing his demand. The executors are the personal representatives of the testator, and suable, as such; and even if their power to pay were suspended by the statute, it does not follow that that circumstance deprives the creditor of the right to establish a contested claim, so as to place himself in a situation to collect it immediately upon the removal of the suspension. By obtaining judgment the creditor does not acquire the power by his own act to enforce payment. No execution can be issued upon a judgment against an executor until after his account is settled, unless by order of the surrogate appointing him. (2 R.S., 88, § 32; id., 116, § 19, b [2 Stat at L., 120]; 2 R.S., 363, § 3.) The whole matter of enforcing payment of the judgment is under the control of the surrogate, and if the act of 1871 suspends such payment, the surrogate would, of course, defer any proceeding to that end until the termination of the statutory suspension. But the executors are such to all intents and purposes, subject *Page 179 
only to the special restraints imposed by the statute. There is nothing in the act of 1871 which restrains executors, appointed thereunder, from advertising, under the order of surrogate, for claims, admitting or rejecting them, referring them, or setting in operation the short statute of limitation of the time for bringing actions against executors upon rejected claims. In the absence of any express declaration to that effect, it cannot be presumed that it was the intention of the legislature to deprive the estate of the benefit of the statutory provisions in its favor in these respects.
Independently of the question whether payment of debts can be ordered by the surrogate, we see no just reason for holding that the act of 1871 prevents creditors from establishing their claims by prosecuting them to judgment against the executors during the pendency of the litigation as to the probate of the will. But we are further of opinion that it was not the intention of the act of 1871 to interfere with the payment of debts during the litigation. The rights of the creditors cannot be affected by the determination of the controversy as to the will, however that may result. Their rights are independent of the will, and superior to those claiming under or contesting it. To stay all proceedings toward the execution of the provisions of the will, pending the litigation, such as the payment of legacies, the sale of real estate, under a power, and the division or distribution of the personal property among the beneficiaries, is manifestly just; but there can be no sound reason for absolutely prohibiting the payment of debts during a protracted litigation, by the result of which the rights of the creditors will in no manner be affected. At the time of the passage of the act of 1871, even collectors appointed by the surrogate of New York, could be authorized by the surrogate to advertise for claims and pay debts. (Laws of 1870, chap. 359, § 10.) The act of 1871 is general, and applies to the city of New York, as well as to the rest of the State. It cannot be supposed that the legislature intended to deprive creditors of the means of thus obtaining payment of their claims or the *Page 180 
estate of the privilege of freeing itself from the accumulation of interest upon such claims, which would, naturally, exceed the income arising from funds which could not be permanently invested, but must be kept in readiness to abide the termination of the litigation, the end of which must necessarily be uncertain. The more rational interpretation, seems to us to be, that the purpose of the act of 1871 is to provide that when the will is established prima facie, by being admitted to probate by the surrogate, the machinery of a collectorship, and the double commissions thereby occasioned, shall be dispensed with, and that the executors shall proceed to the performance of all their duties, except those which are dependent upon the final establishment of the will; and thus their power to administer the estate, so far as creditors are concerned, instead of being confined to the city of New York, shall vest in the executors, and be extended over the whole State. It is not reasonable to suppose that the legislature intended that executors to whom letters should be issued, under the act of 1871, should possess more limited powers than collectors appointed in the city of New York possessed before the passage of this act.
The whole argument, on the part of the appellants, upon this branch of the case rests upon their construction of the words, "distribute the effects of the testator," as employed in the act of 1871. These words, they contend, include the payment of debts. In general, the term "distribution," when applied to the estate of a deceased person, refers to the ultimate division of the estate among the next of kin, in case of intestacy, or among the beneficiaries under a will, after the estate is free from debt. In Bouvier's Law Dictionary, distribution is defined to be, in practice, "the division, by order of the court having authority, among those entitled thereto, of the personal estate of an intestate, after payment of the debt and charges; and, sometimes, `the division of a residue of both real and personal estate, and, also the division of an estate according to the terms of a will.'" There is, in the work referred to, no recognition whatever of the applicability *Page 181 
of that term to the payment of the debts of a deceased person by his executors or administrators. In Kent's Commentaries (vol. 2, p. 420), under the head of the distribution of personal estate, the term is exclusively applied to the residue, remaining after the payment of debts. In Jacob's Law Dictionary (title, "Executor"), his duties are enumerated consecutively, to pay debts, pay legacies, and "distribute" the residue; and in the Revised Statutes (2 R.S., 96, § 75), in case of intestacy, the surplus of the estate, remaining after payment of debts, is directed to be "distributed among the widow and next of kin; and page 95, section 71, the distinction between "payment of debts" and "distribution" is observed, with respect to executors as well as administrators. The terms "payment" and "distribution," as applied to the estates of deceased persons, have their settled, distinctive meanings, and these are not destroyed by the casual application of the term distribution in other parts of the statute (referred to by the appellants), to the division, among creditors, of a fund, raised expressly for the payment of debts.
We are satisfied that the restraint upon a distribution of the estate, contained in the act of 1871, relates to the "distribution" in the legal sense of the term, and not to the payment of debts. If a measure so important to the estate, as well as to the creditors, had been intended to be prohibited, it is but reasonable to suppose that the legislature would have, in terms, restrained the payment of debts, as well as of legacies, and would not have left it to be spelled out of a prohibition against "distribution," which is not the appropriate legal term applied to the payment of debts.
The more difficult question arises upon the second proposition of the appellants, viz., that the reversal of the decree of the surrogate, admitting the will to probate, superseded and rendered void the letters testamentary. If the reversal had been final, and the will rejected absolutely, or declared invalid, there would be much force in this objection. But such was not the case here. The judgment of this court, which was made the judgment of the Supreme Court, in *Page 182 
substance, granted a new trial, before a jury, of the questions of fact involved in the case, viz., the genuineness of the will. It has not yet been finally determined that the will is invalid. That question is still to be tried. The judgment is not final simply because rendered by this court. The case stands precisely as if the General Term, instead of sustaining the decision of the surrogate, had reversed it, and ordered the question to be tried by a jury, for this is the judgment which, upon the mandate of this court, has been entered in the Supreme Court. The letters testamentary have not been revoked by the surrogate. There is no statute which abrogates the powers or office of the executors in such a case. On the contrary, the statutes prescribe that if the decision of the surrogate is reversed on appeal, on a question of fact (as in this case), an issue shall be made and tried; and in the final determination thereof (that is of the issue), being certified to the surrogate, whose decision has been appealed from, he shall annul and revoke the probate, and enter such revocation in his records, and attest the same, and cause notice thereof to be immediately served on the executors therein named, and to be published; and that upon such notice being served upon such executor his power and authority shall cease, and he shall account to the representatives of the deceased person whose alleged will was contested, for all moneys and effects received, but shall not be liable for any act done in good faith in the collection of moneys or payment of debts previous to the service of the notice of revocation. (2 R.S., 609, § 98; id., 62, §§ 35, 37, 38.) This is the substance of the statutory provisions on the subject, and they lead clearly to the conclusion that when the surrogate's decision, admitting a will to probate, is reversed on appeal, on a question of fact, and an issue is awarded, the powers of the executors do not cease until after the final determination of such issue, and the revocation by the surrogate of the probate, and notice to the executor of such revocation.
No such proceedings appear to have been had in the present case; and we are, therefore, of opinion that the powers of the *Page 183 
appellants, as executor and executrix, had not ceased at the time of the rendition against them of the judgment appealed from; and that the judgment must be affirmed, with costs de bonis.
All concur.
Judgment affirmed.