THE STATE OF MISSOURI ex rel. WALLER BURNS et al., Appellants, v. M. A. ROMJUE, Probate Judge, Respondent.

**Kansas City Court of Appeals, May 3, 1909.**

1. **ADMINISTRATION: Rights of Next of Kin: Personal Privilege.** The right of the next of kin to administer is a personal privilege and cannot be delegated to another and the law puts such resident heirs to the choice of administering themselves or permitting the probate court to appoint a stranger.

2. ———: ———: ———: **Renunciation.** Where such next of kin renounce their intention to administer in favor of another the privilege is lost forever and cannot be recalled.

Appeal from Macon Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Guthrie & Franklin, C. G. Buster, Higbee & Mills* for appellants.

(1)    Nathaniel Broyles died single, intestate and without issue. Relators, as next of kin, were entitled to administer. Section 7 of the statute, fixes the priority, and the probate court may be compelled by mandamus to appoint them. It is a ministerial, not a judicial act. Flick v. Schenk, 212 Mo. 279; Grover v. Fowler, 108 Mo. 470; Mitchell v. Guinotte, 113 Mo. App. 399; State ex rel. v. Reynolds, 121 Mo. App. 699; Hollingsworth v. Jeffries, 121 Mo. App. 660; In re Estate Evans, 117 Mo. App. 629; Stevens v. Larwill, 110 Mo. App. 140; Kopper v. Coever, 57 Mo. App. 71. (2)    The renunciations filed by relators were coupled with a condition that James Neet and John S. Burns should be appointed administrators. This condition was not performed, and relators were not bound thereby, and had

the right to insist on their priority. It was not a waiver. Secs. 243, 244, Woerner Am. Law Administration (2 Ed.), pp. 559 and 530, and cases cited; In re Haug's Estate, 60 N. Y. Supp. 382—foot 384; Rinehart v. Rinehart, 27 N. J. Eq. 475; McClellan's Appeal, 16 Pa. St. 110, 116; Mouisc v. Shiels, 52 Pac. 808. (3) The probate court ignored the conditional waiver of relators to administer, and on March 3, 1908, cited them to appear to administer. This was a direct adjudication they had not renounced their priority. They appeared on March 10th, and formally applied in writing to administer before any appointment was made. Even if they had unconditionally renounced, their formal application, filed and considered by the court, was a withdrawal, and the duty to appoint relators was mandatory. 18 Cyc., 81c, 98b; Jewett v. Turner, 52 N. E. 1082; In re True, 120 Cal. 352, 52 Pac. 815; 11 Am. and Eng. Ency. Law (2 Ed.), 757 (6) n. 2. (4) Relators appeared within the time appointed by the citation of the court and applied for letters. The appointment of strangers in blood was "a most unwarrantable act," an arbitrary invasion of relators' vested right to administer. Mullanphy v. County Court, 6 Mo. 566; State v. Fowler, 108 Mo. 470. (5) Relators were competent and qualified to administer. They were sober and intelligent; in fact no question was raised as to their competency. 18 Cyc. 77 (3).

*John T. Barker, M. D. Campbell, Dan R. Hughes, R. S. Matthews & Son, Dysart & Mitchell* and *R. W. Barrow* for respondent.

(1) Renunciations and waivers in writing of the right to administer were filed within thirty days after the death of Nathaniel Broyles, by all parties who had right to administer this estate and respondent submits that all the waivers of all parties who had a priority in the administration of said estate were before the pro-

bate court and were by it examined, construed and found and adjudged to be absolute waivers. And the finding of said court is a judicial question and is not subject to mandamus. (2) The peremptory writ of mandamus should be denied. The discretion would be taken from the probate court if granted. R. S. 1899, sec. 7; State ex rel. v. Trustees of Town of Pacific, 61 Mo. 159. The mandamus must be limited to one requirement. Peoples v. Brooks, 57 Ill. 142; State v. Milwaukee, 22 Wis. 397. In mandamus proceedings the court can grant no relief except what is specified in the alternative writ, and if not warranted in granting that must refuse any relief. School District No. 11 v. Landenbaugh, 80 Mo. 190. (3) Respondent insists that appellant and relators must fail in this cause because they did not have, when the matter was before the probate court, the absolute right to be appointed administrators of said decedent's estate. State ex rel. v. Flad, 108 Mo. 614; State ex rel. v. Rombauer, 125 Mo. 632; Bell v. Pike County, 61 Mo. App. 173. (4) The renunciations and waivers in writing were filed in court and entered of record within thirty days after the death of decedent. The waivers of renunciations, when once made, are absolute and final. The great weight of authority is against the right to withdraw a renunciation, notwithstanding it may be coupled with a request or condition. In the Estate of Kirtlan, 16 Cal. 161; Thornton v. Winston, 406 (Leigh) Va.; Stockdale v. Gannaway, 14 Md. 99; Carpenter v. Jones, 44 Md. 625; Lutz v. Mahan, 80 Md. 233; Woerner's Law of Admr., p. 532; Glenn v. Reed, 74 Md. 241; Pollard v. Mahler, 55 Md. 289; In re Sullivan Estate (Wash.), 65 Pac. 793; In the Matter of Chute, 37 Missc. Rep. (N. Y.) 710; In the Matter of Cornell, 75 N. Y. St. 664; In re Silver Estate (Cal.), 46 Pac. 296; In Kirtlan's Estate, 16 Cal. 161; In re Bedell's Estate, 97 Cal. 339; 18 Cyc. 98. (5) A prior right to administer an estate is waived by the request of the person entitled to letters of administration for

the appointment of some person.   Georgetown College Case, 34 Md. 450.

JOHNSON, J.—This is a mandamus suit brought by relators in the circuit court of Macon county to compel the respondent, the probate judge of that county, to revoke letters of administration improvidently issued and to issue letters to relators.   An alternative writ was issued, appropriate pleadings were filed by the respective parties and the issues were tried and determined in favor of respondent.   Relators bring the cause here by appeal.

Nathaniel Broyles died intestate in Macon county, February 1, 1908.   He left neither widow nor issue and of his heirs, three were residents of this State, namely, Martha J. Neet of Sullivan county, a sister, relator Simeon A. Broyles of Harrison county, a half brother, and relator Waller Burns of Macon county, a nephew.   The estate was quite large and consisted of both real and personal property.   Letters of administration were issued March 21, 1908, by respondent to Roscoe E. Goodding and John W. Gross, both residents of that county and both strangers to the estate.   Goodding was cashier of the Bank of La Plata, of which decedent had been president and Gross was the public administrator of Macon county.   They duly qualified as administrators and proceeded to administer the estate.   The revocation of their letters is one of the principal objects of the present suit and the question of whether they were issued improvidently is the main issue before us for solution.   Facts material to this issue are as follows:

Relator Simeon Broyles, who was one of the resident heirs, is an old man engaged in farming in Harrison county.   His wife was over seventy-one years old and was in such ill health that she required the constant attention of her husband.   He did not wish to be burdened with the cares of the estate and so expressed himself.   February 13, 1908, he filed with respondent the following "waiver": "I hereby waive my right to ad-

minister on the estate of Nathaniel Broyles, deceased, and request you to appoint Jas. Neet and John Burns as administrators of said estate."

Relator Burns likewise expressed a strong disinclination to serve as administrator and on February 15, 1908, filed with respondent his renunciation in writing as follows: "We, Waller Burns and N. J. Bunce hereby waive our rights to administer on the estate of the late Nathaniel Broyles, deceased, being heirs of the deceased, living in Missouri, and entitled to administer thereon, and we request and waive in behalf of John S. Burns and James Neet and no others and request the probate court to appoint them to act as said administrators."

The remaining resident heir, Martha J. Neet, was an aged widow, in very poor health. She did not wish to be appointed administratrix and renounced her right on February 17, 1908, in the following written instrument filed with respondent: "I hereby waive my right to administer upon the estate of N. Broyles, deceased, said right being conferred upon me by right of being an unmarried sister of deceased, and respectfully ask the court to appoint Roscoe E. Goodding, of La Plata, Macon county, Missouri, as administrator of such estate, believing as I do that such appointment will be to the best interest of all concerned."

James Neet and John Burns whose appointment was requested by relators were strangers to the estate. Neet was the son of Martha J. Neet, who expressed to respondent her disapprobation of her son's application. She claimed that his unfitness for the place had been demonstrated by his conduct in past business affairs. A majority of the heirs favored the appointment of Neet and Burns, but without reflecting on the moral character of either, we think the evidence as a whole supports the conclusion of respondent that neither was as well qualified for the administration of a large estate as Goodding and Gross. From the viewpoint of the welfare of the estate the choice of respondent appears to

have been the result of sound judgment. That it was made in good faith is indisputable. Whether respondent had the right to make the choice among strangers is another question that calls for reference to other facts in the record. The immediate effect of the filing by the resident heirs of their renunciations was to raise a multitude of candidates for the office, most of whom pressed their claim with great assiduity. Lawyers were employed by various contestants and much feeling was engendered among the factions. Evidently respondent who was trying to perform his duties properly endeavored by proceeding slowly and cautiously to reach a just solution of the difficulty. He continued the matter a number of times and did not act until March 21, when, as we have stated, he appointed Goodding and Gross. On March 3, relators actuated by the fear that their candidates might lose in the race filed with respondent the following instrument in writing:

"Now come Simeon Broyles and Waller Burns and show to the court that they have heretofore waived their rights to administer as distributees in the estate of Nathaniel Broyles, deceased, in favor of John Burns and James Neet and them alone, and if the court should deem it best not to appoint the said John Burns and James Neet, these distributees assert their rights as distributees to administer on the estate of the said Nathaniel Broyles, deceased, since the said Simeon Broyles is a half-brother of the said deceased, and the said Waller Burns is a nephew of the said deceased, whose mother, . . . . Burns, is dead, and she was a sister of deceased, Nathaniel Broyles. These applicants would say that they are all residents of the State of Missouri and that the said Waller Burns lives in Macon county and the said Simeon Broyles in Harrison county in said State of Missouri and they are fully qualified in all regards to administer in said estate."

On the same day, March 3, 1908, respondent issued and caused to be served on relators and Martha J. Neet,

citations all similar in form to that served on relator Waller Burns, which was as follows: "Whereas, I am informed that Nathaniel Broyles has departed this life intestate and you as his nephew and an heir are by the statutes of the State of Missouri given some priority in the right to administer his said estate you are therefore cited to appear before the undersigned, judge of the probate court at my office in the city of Macon, State of Missouri, and apply for letters of administration on said estate, within five days after the receipt of this notice; or in default thereof letters will be granted to such person as the court, or judge thereof shall consider most suitable."

On March 10th, relators in response to these citations, filed a written application for letters. Before appointing Goodding and Gross, respondent heard the claims of the respective candidates argued by counsel. On that occasion, relators made it plain, as they had done before, that they did not desire the appointment for themselves, that they were still in favor of the candidacy of Neet and Burns and that their own application was merely a strategical move designed to force their candidates on respondent. In effect, they said to respondent, "Appoint Neet and Burns, but if you are resolved not to appoint them, then our application as resident heirs stands in the way of the appointment of any other stranger." Relators did not file a written revocation of their renunciations. They argue that the necessity for such action was obviated, first, by the citation issued by respondent and, second, by their written applications for letters. Questions, the proper solution of which, in our opinion, disposes of the case adversely to the contention of relators, are these:

First, may a resident heir entitled by law to letters of administration renounce his priority conditionally? Second, when the right is once renounced, may it be recalled?

Letters of administration cannot be granted to a non-resident of the State (section 10, Revised Statutes 1899). The statutes provide that letters shall be granted, first, to the husband or wife; second, "to those who are entitled to distribution of the estate or one or more of them, as the court or judge or clerk in vacation shall believe will best manage and preserve the estate." Section 7, Revised Statutes 1899: "If no such person apply for letters within thirty days after the death of the deceased, the court . . . may issue citations to him or them . . . to appear and qualify for administration, giving at least five days' time for that purpose and if the person or persons so cited fail to administer within the time appointed letters may be granted to any person whom the court . . . may deem most suitable." Section 8: "Letters testamentary and of administration may at any time be granted to any person deemed suitable if the person or persons entitled to preference file their renunciation thereof in writing," etc.

Since the decedent left no widow nor issue, relators and Martha J. Neet, being the only resident heirs, were possessed of the first right to administer and had they refrained from renouncing that right and made application for letters in response to the citation issued by respondent, it would have been the duty of respondent to select an administrator from among them. But all of the members of this privileged class renounced their right in writing within the time prescribed by statute for the exercise thereof. The right was purely a personal privilege and could not be delegated to another. [In re Cresse's Case, 28 N. J. Eq. 236; In re Scott's Estate, 106 N. W. 1003; In re Estate of Sargent, 62 Wis. 130.] Our statute does not extend the scope of the right to include the privilege of nominating an administrator. If the members of the privileged class renounce their right or lose it by failing to exercise it within the time prescribed by statute, then the duty devolves .

on the probate court of selecting an administrator. In the performance of such duty, the court is not compelled to accede to the demands of the resident heirs or other interested parties, though he should give due consideration and weight to their recommendations. The court should exercise a sound discretion and appoint the person who, in his judgment, is best qualified to give an honest and efficient administration of the estate. Since the right of the resident heirs to administer is but a personal privilege which may be lost by waiver or renunciation and, if lost, leaves such heirs without the privilege of selecting an administrator, we think it should follow logically that a renunciation cannot be coupled with a condition that in effect is but an attempt to dictate to the court whom it shall appoint. This view is contrary to that expressed by some of the authorities to which our attention has been directed, but we think it is supported by the weight of authority and reason. The law intends to put the resident heirs to the choice of administering the estate or of permitting the probate court to appoint a stranger. It does not intend that the privilege shall be used to coerce the court into appointing a person it may deem unsuitable.

We regard the renunciations filed by relators as unconditional and pass to the question of whether relators could retract them at any time before the appointment of an administrator. In our opinion, the better doctrine is that when the privilege once is renounced or waived, it is lost forever and cannot be recalled. Two very potent reasons may be given in support of this doctrine. First, as a general rule, the estates of deceased persons demand speedy attention and injury would result from delays that might be caused if resident heirs could renounce and recall their privilege at will and, second, the right of revocation, if it existed, might be used as was attempted in the present case, not in good faith for the purpose of enjoying the privilege, but as a club to hold over the probate court to compel it to appoint, not the

persons whom the court in the exercise of its judgment found were best qualified to administer, but those whom the resident heirs favored. The doctrine just announced is abundantly, though not unanimously, sustained by the authorities. We refer to the briefs of counsel where the authorities for and against it are collated. We conclude that respondent acted within the scope of his right and duty in refusing to acknowledge the right of relators to recall their renunciations and, as the appointment made by him appears to have been the result of the exercise of sound judgment and not of an arbitrary abuse of power, we find no occasion to interfere.

Accordingly, the judgment is affirmed. All concur.