STATE of Missouri at the Relation of Jarrett DRYDEN, Emily Dryden Simmons, and G. L. Dryden, Co-executors of the Estate of G. L. Dryden, Deceased, The First National Bank, Montgomery City, Missouri, Duncan R. Jennings, Executor of the Estate of Lula Blades, Deceased, Callie M. Smith, Reese H. Maupin, beneficiary of the Trust Estate of Hughes Maupin, Harris Maupin, Jr., beneficiary of the Trust Estate of Hughes Maupin, Harold L. Nebel, executor of the Estate of Emil P. Nebel, Deceased, Estate of William S. Oliver, Deceased, Relators-Appellants,

v.

Honorable Adolph THYM, Special Judge pro tem. of the Probate Court of the City of St. Louis, State of Missouri, and Honorable Thomas J. Boland, Judge of the Probate Court of the City of St. Louis, State of Missouri, Respondents.

No. 29141.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1955.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 13, 1955.

Not to be reported in State Reports.

Duncan R. Jennings, Montgomery City, N. Murry Edwards, St. Louis, for relators-appellants.

Barnes & Barnes, Latney Barnes, Mexico, for respondents.

HOUSER, Commissioner.

This is an appeal from a judgment of the Circuit Court of the City of St. Louis dismissing a "Petition for Writ of Prohibition or Mandamus." Relators, as creditors holding allowed claims against the Estate of Emil P. Rosenberger, deceased, filed this petition against the respondent Special Judge pro tem. and the later appointed Judge of the Probate Court of the City of St. Louis, alleging the following facts: Both Lucille Rosenberger, widow and executrix named in the will of Emil P. Rosenberger, deceased, and Glover E. Dowell, successor-executor named therein, have died. (For the sake of brevity we will refer to the parties by their first names after identifying them.) Rival applications for the issuance of letters of administration on the Estate of Emil were made to the Probate Court of the City of St. Louis by the creditors and by Mary Jane Paulus, a daughter of Emil. After a hearing on the objection of the creditors to the appointment of Mary Jane the Special Judge pro tem. appointed her as administratrix c. t. a., d. b. n. and denied the two applications filed by the creditors for letters. In this petition relators charged that the order of

appointment was void because (1) Mary Jane is disqualified by law from acting as Administratrix of the Estate of Emil for the reason that she is Administratrix of the Estate of Lucille, the latter of whom was formerly the Executrix of the Estate of Emil; (2) Mary Jane is not a suitable and competent person to act as Administratrix of the Estate of Emil for the reason that by acting as administratrix of both estates she would be representing conflicting interests and would be required to account with herself; and further, that as an heir of Kate Rosenberger, deceased, Mary Jane would be representing conflicting interests by acting as such administratrix because the heirs of Kate claim an undivided one-half interest in a certain tract of land which was actually owned by Emil, but which was inventoried in his estate as though he owned only an undivided one-half interest therein; that to pay relators' allowed claims, there being insufficient personal property in the Estate of Emil to satisfy them, Mary Jane as administratrix would be compelled to file a suit in equity against the heirs of Kate, naming herself as one of the defendants, for the purpose of quieting and clearing the title to the land in the name of Emil; and (3) relators are the only persons "entitled to distribution" and as such are entitled to administer the estate. It is alleged that the probate judge was without legal authority to enter the order; that the allowed claims in the Estate of Emil exceed $50,000 and the total value of the assets does not exceed $26,000, as a consequence of which the heirs of Emil, including Mary Jane, would not share in the distribution of the estate, are not entitled to distribution, and are not entitled to administer.

Relators prayed for a writ of prohibition to prevent respondents from carrying out their orders and from administering the oath of office to and qualifying Mary Jane as administratrix, or in the alternative for a writ of mandamus to command respondents to set aside, strike and expunge the order appointing Mary Jane as administratrix and to appoint one of the creditors, or

a representative of the creditors, as administrator.

An order to show cause issued and a return in the nature of a general denial, coupled with a plea of laches and limitations, was filed by respondents.

The questions before us on this appeal are the validity of the order granting Mary Jane and denying relators letters of administration, the authority of the probate court to make the order, and whether the order constitutes an abuse of discretion.

Relators' first point is that by Section 461.110 RSMo 1949, V.A.M.S. Mary Jane is absolutely disqualified from acting as administratrix of the estate of her father, since she is the acting administratrix of the estate of her mother, the latter of whom was the executrix of the estate of her father. Section 461.110, supra, after providing that no probate judge, clerk or deputy in his own county, and no person under 21 years of age or of unsound mind shall be an executor or administrator, concludes as follows: "No executor of an executor, in consequence thereof, shall be executor of the first testator." Relators take the position that by virtue of this section an executor of an executor is absolutely disqualified from acting as executor of the first testator, and urge that Mary Jane is thereby disqualified to accept appointment as administratrix. Relators' construction does not take into consideration the historical development of this statute, or the fact that the statute applies to executors and not to administrators.

■■■ By the English common law a sole executor, or the only surviving executor of several co-executors, could transmit his office by his own will to his own executor, thus delegating the confidence originally reposed in him to the person in whom he himself confided. Accordingly the executor of an executor could pass on the estate in a series of appointments, as long as there was no intervening intestacy to break the chain of representation, until the estate was finally settled and distributed.

Thompson on Wills, 3rd Ed., § 553, p. 776; Schouler on Wills, Executors and Administrators, 6th Ed., Vol. 3, § 1531, p. 1758; Williams on Executors, 12th Ed., Vol. I, p. 152; Blackstone's Commentaries (1897), Vol. 2, p. 961. Many states of the Union have changed the common law rule by statute. In this jurisdiction, under § 461.110, supra, the executor's executor no longer represents the executor's testator. State ex rel. Karrenbrock v. Mississippi Valley Trust Co., 209 Mo. 472, 108 S.W. 97, loc. cit. 100. The statute, however, has no bearing in the instant case. It acts on executors, not on administrators. Mary Jane is not an *executrix* by appointment in the will of Lucille. She is an *administratrix* by appointment of the probate court. Neither Lucille as Executrix of the Estate of Emil nor Glover Dowell as successor-executor undertook by will to transmit the office to Mary Jane. Mary Jane is not the executrix of an executrix and is not disqualified by § 461.110, supra, from acting as Administratrix of the Estate of Emil.

■ Upon the death of the executrix and successor-executor named in the will of Emil, there being unpaid allowed claims against the estate, it became the duty of the probate court to grant letters of administration of the goods remaining unadministered "to those to whom administration would have been granted if the original letters had not been obtained." Section 461.-540 RSMo 1949, V.A.M.S. This reference is to Section 461.030 RSMo 1949, V.A.M.S., which provides as follows:

"1. Letters of administration shall be granted

"(1) To the husband or wife;

"(2) To those who are entitled to distribution of the estate, or one or more of them, as the court or judge or clerk in vacation shall believe will best manage and preserve the estate.

"2. Provided, however, if the court, or judge in vacation, should believe no one of such persons entitled to administer is a competent and suitable person,

some other person than those above mentioned may be appointed."

Relators' second point is that Mary Jane is not a competent and suitable person within the meaning of said § 461.030 for the following reasons:

(1) That in filing a settlement to the time of the death of her mother and also a settlement thereafter until the date of her appointment Mary Jane would be required "to file settlements with herself" and thus would be representing conflicting interests. Where the interests of two estates conflict, as in State ex rel. Flick v. Reddish, 148 Mo.App. 715, 129 S.W. 53, and in State to Use of Miller's Adm'r v. Bidlingmaier, 26 Mo. 483, (where there was a demand in behalf of one estate to be presented for allowance against the other) the same person cannot act as administrator for both. In the instant case, however, there is no evidence that either estate is indebted to the other, or that litigation between the two estates is pending or contemplated, or that in any other wise there is any conflict between the interests of the two estates. Neither in their briefs nor in the argument have relators revealed in what particulars the claimed conflict exists, and we find none.

(2) That as Administratrix of the Estate of Emil, Mary Jane would be required to file an adversary suit against the heirs of Kate, including herself, to clear and quiet title as alleged in the petition, thus resulting in an irreconcilable conflict of interests on the part of Mary Jane. Relators cite the cases of Arrington v. McCluer, 326 Mo. 1011, 34 S.W.2d 67, and Davis v. Roberts, 206 Mo.App. 125, 226 S.W. 662, which advert to the rule that persons asserting interests hostile to the trust involved in an executorship are not suitable persons to execute the trust.

■ The precise question is whether on the evidence before him the special probate judge abused his discretion by appointing one who asserts or claims interests hostile to the interests entrusted to her, or whose interests necessarily conflict with those of the estate. Relators had the burden of

showing that there is a real and substantial controversy as to the ownership of the one-half interest referred to in the petition and reasonable cause to believe that the entire interest in the real estate belonged to Emil. Davis v. Roberts, supra, 226 S.W. loc. cit. 664. An experienced title attorney testified that the inventory in the Estate of Emil lists his ownership of a one-half interest only in certain real estate, whereas Emil asserted ownership to the whole of the land by paying taxes thereon, and that Emil did own the entire interest therein; that there is a deed of record from Emil to Kate to certain lands which they had inherited from their father in which it was recited that the conveyance was executed for the purpose of effecting a mutual partition of the lands jointly owned by them, but that the attorney had found no record of any deed from Kate to Emil or Lucille to any interest in any lands. In his opinion there was an outstanding unrecorded deed from Kate to Emil, and it would be necessary for the Estate of Emil to file suit against the heirs of Kate, including Mary Jane, to quiet the title in Emil to the entire interest in the inventoried real estate. It was in evidence that the record title to the land revealed only a one-half interest in Emil and a one-half interest in Kate and that none of the real estate in question was listed in the inventory filed in the Estate of Kate. Mary Jane testified that she owned a one-third interest in the real estate in which her Aunt Kate died seized. She disclaimed familiarity with the inventory filed in the Estate of Emil, and stated that she did not know whether she claimed any interest as an heir of Kate in a 260-acre farm, a one-half interest in which was inventoried as a part of Emil's estate. When asked whether, as administratrix, she intended to ask for an order of court to sell the real estate to pay creditors she testified that she intended to do what the probate judge and her attorney advised her to do. She further testified that neither she nor the Estate of Lucille had any interest, directly or as assignee, in any of the claims allowed against the Estate of Emil. Relators made an offer of proof that it would be necessary for her as administratrix to institute a suit against the heirs of Kate to clear title to the 260-acre farm and another 360-acre farm.

█ Under the evidence we cannot convict the probate judge of an abuse of discretion in the finding, implicit in the order of appointment, that Mary Jane does not assert or claim interests hostile to or which conflict with the interests of the Estate of Emil. The burden of proof to which we have referred was not met by testimony showing that Mary Jane claims a one-third interest in unspecified real estate of which Kate died seized, and an attorney's surmise that there is an outstanding unrecorded deed from Kate conveying an interest in land to Emil, which will necessitate a suit to quiet title. No real and substantial controversy was shown to exist. Nor was there any substantial evidence of the execution or delivery of the putative deed. Consequently there was no reasonable cause to believe that Emil owned the whole, and not merely a one-half, interest in the land.

█ The last question before us is whether relators, whose allowed claims as creditors will exhaust this insolvent estate thus leaving nothing for the heirs, are among the preferred class of "those who are entitled to distribution of the estate," within the meaning of § 461.030, supra, so as to be entitled to control the appointment of an administrator de bonis non, to the exclusion of the next of kin. This question must be answered in the negative. From a consideration of the common law and statutory background of the present day office of statutory administrator, the wording of the statute, its construction through the years by the courts and text writers of this state, the wording and meaning of other sections of Chapter 461, RSMo 1949, V.A. M.S. relating to Executors and Administrators, the customary practice and procedure of probate courts in this state, and from the standpoint of practical considerations in the administration of estates, we are firmly convinced that, regardless of the solvency or insolvency of the estate, the distributees referred to in § 461.030, supra, are the same

persons as the distributees referred to in § 468.010 RSMo 1949, V.A.M.S. relating to intestate succession and are entitled to preference in the right to administer the estate of their intestate in the same rank as they enjoy the right to inherit. Conversely, creditors are not distributees within the meaning of par. 1(2) of § 461.030, supra, and are not members of that preferred class.

By the English law creditors were not given priority of right to administer. Indeed, the right to letters of administration did not exist at common law. That right is of purely statutory origin. Our present day statutory administrators find their first English counterparts in Statute 31 Edward III, Ch. 11, requiring ordinaries to depute the nearest and most lawful friends of deceased persons to administer their goods. The "next and most lawful friend" of the intestate was interpreted to be the next of blood that is under no legal disabilities. A later statute (21 Henry VIII, Ch. 5) permitted the ecclesiastical judge to grant administration either to the widow or to the next of kin, or both, and to exercise his discretion in selecting one from several persons of the same degree of kindred. 2 Cooley's Blackstone 495, 496; Leakey v. Maupin, 10 Mo. 368; 1 Limbaugh, Missouri Practice, § 558.

Under the settled meaning and construction of the wording employed in par. 1(2) of § 461.030, supra, creditors are not within the preferred class. The term "distribution" when applied to the estate of a deceased person refers to the ultimate division of the estate among the next of kin, in case of intestacy, or among the beneficiaries under a will, after the estate is free from debt. Thomson v. Tracy, 60 N.Y. 174, loc. cit. 180. As there pointed out, the term is defined in Bouvier's Law Dictionary to be, in practice, "the division, by order of the court having authority, among those entitled thereto, of the personal estate of an intestate, after payment of the debts and charges; and, sometimes, 'the division of a residue of both real and personal estate, and, also the division of an estate according to the terms of a will.'" In Kent's Commentaries, Vol. 2, p. 420, the term "distribution" is exclusively applied to the residue of the personal estate remaining after the payment of debts. Legatees and heirs receive "distribution" of the estate, whereas creditors receive "payment" of their claims. Creditors, as such, do not participate in the "distribution" of an estate. It is further to be observed that par. 1(2) of § 461.030, supra, does not limit the right of priority to those who will *actually share* in the division of the residue of the estate, but rather grants it to those who are *entitled to share* therein. Although the right might prove valueless from a financial standpoint because of the insolvency of the estate, such an eventuality does not impair the existence or validity of the right. In re Brown's Estate, 153 Misc. 41, 274 N.Y.S. 496, loc. cit. 499.

The courts of this state and local text book writers have recognized that Missouri has adopted the principle of the English system that those nearest in relationship and interest have the right of priority to administer the estates of deceased persons. Mullanphy v. St. Louis County Court, 6 Mo. 563; In re Estate of Hill, 102 Mo.App. 617, 77 S.W. 110, loc. cit. 111: "Appellant, a nonrelative and stranger in blood to the deceased, could not have applied for letters as a matter of right under the provisions of the statute"; Hollingsworth v. Jeffries, 121 Mo.App. 660, 97 S.W. 632, loc. cit. 634: "In these enactments is observed the fixed policy of entrusting the administration of the estate of a deceased person to one who, by reason of his heirship, has a personal interest in the estate rather than to one who is a stranger thereto", and "Plaintiff, the only heir of the decedent who resided in this state, had the prior right to administer * * *"; State ex rel. Burns v. Romjue, 136 Mo.App. 650, 118 S.W. 1188, loc. cit. 1190; "* * * relators * * * being the only resident heirs, were possessed of the first right to administer * * *"; State ex rel. Lillard v. Tompkins, Mo.App., 262 S.W.2d 316, loc. cit. 317: "* * * Relator, as the sole resident distributee, * * * is entitled to the appointment

\* \* \*"; Kelley's Missouri Probate Law and Practice, 5th Ed., § 119; 1 Limbaugh, Missouri Practice, §§ 559, 561.

▬▬▬ This is not to say that creditors may not act as administrators, in proper cases. If those entitled to preference are not competent or suitable, § 461.030 subd. 2, supra, or, upon being cited under Section 461.040 RSMo 1949, V.A.M.S., fail to administer within the time appointed, or renounce, or are nonresident, Section 461.050 RSMo 1949, V.A.M.S., some other person deemed suitable may be appointed. In such cases creditors frequently are appointed. The appointment of a stranger or person not an heir of the deceased prior to the expiration of the 30-day period prescribed in § 461.040, supra, however, is void. In re Graves' Estate, Mo.App., 73 S.W.2d 844; In re Wilson's Estate, Mo.App., 16 S.W.2d 737; Pikey v. Riles, 223 Mo.App. 921, 20 S.W.2d 550.

▬▬▬ A further and very practical consideration favors a construction adverse to the contention of relators. If it were the rule that creditors of insolvent estates had the prior right to administer, to the exclusion of blood relatives, the orderly and expeditious administration of the estates of deceased persons would be interrupted and embarrassed. Intolerable delays would ensue. In order to determine whether an estate was solvent or insolvent a preliminary inquiry would be required in all doubtful cases. The right to administer would depend in many cases upon the opinions of experts called to testify as to the value of real or personal property listed in the inventory, or, conceivably, upon the fluctuations of the stock market. In re Brown's Estate, supra, 274 N.Y.S. loc. cit. 499. The solvency or insolvency of an estate would depend upon the extent and validity of various claims filed or to be filed against an estate, claims which might require extensive litigation before the question was settled. Often the nature of the assets of an estate cannot be determined until after a personal representative authorized to discover and collect them has been appointed and qualified. In the enactment of § 461.030, supra,

the General Assembly did not intend to establish a system of priority of administration based upon the determination of the fact question of the solvency or insolvency of estates, but intended to establish a definite system of priority depending upon inheritable interest in the estate, as a matter of law.

▬▬▬ The judge of the probate court had jurisdiction to make the appointment, and in so doing did not abuse his discretion. Accordingly, there was no error in the action of the circuit court in dismissing relators' petition. The judgment should be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

ANDERSON, P. J., and SAM C. BLAIR and FRANKLIN FERRISS, Special Judges, concur.

### On Relators' Motion for a Rehearing or to Transfer Cause to the Supreme Court of Missouri

Relators, in their motion for a rehearing or transfer, claim that the court in its opinion erred in finding that there is no evidence that the estates of Lucille and Emil are indebted to each other or that litigation between them is pending or contemplated or that in anywise there is any conflict between the interests of the two estates and further erred in failing to find that Mary Jane is not a suitable and competent person to act as administratrix.

The conflict is said to arise out of two circumstances: (1) the circumstance that Lucille as executrix collected rents on Emil's real estate for which she did not account by settlements filed in Emil's estate, and that Mary Jane has collected such rents from the death of Glover Dowell, successor trustee, in February, 1953 to date, which rents are not accounted for. Relat-

ors say that Mary Jane as administratrix of Lucille's estate will be required to file an accounting with herself as administratrix of Emil's estate for rents collected by Lucille, and for rents collected by Mary Jane prior to her appointment as administratrix, and that in making such accountings Mary Jane will be representing absolutely conflicting interests of the two estates; (2) the circumstance that there is a substantial controversy between the creditors of Emil's estate and the heirs of Kate over certain real estate; that the creditors proved that Emil owned the entire fee and not merely a one-half interest therein; that Mary Jane claims an ownership in the disputed one-half interest; that as administratrix of Emil's estate Mary Jane would be required to file an action against herself to quiet title to the one-half interest, as a result of which she would be in an irreconcilable position of absolute conflict in undertaking the duties of administratrix.

In reviewing the evidence on this motion we are still unable to discover any conflict of interests between the estates of Lucille and Emil. The claim that Mary Jane will find herself in the embarrassing and impossible position, as administratrix of Emil, of accounting with herself as administratrix of Lucille, as to the rents collected by Lucille, is not supported or borne out by the evidence. Again the pleadings have been scanned, the transcript of the oral testimony searched, and all of the documentary exhibits examined one by one, but nowhere is there a scintilla of evidence that Lucille collected any rents for which she did not account. During the course of the hearing before the probate judge, counsel for relators persistently charged that Lucille had collected unaccounted-for rents, but he neglected to introduce any proof of the fact. We cannot convict the probate judge of an abuse of discretion for not determining the case upon the basis of facts which were not established by evidence.

The rents collected by Mary Jane provide no impediment to her appointment as administratrix. The rents either were or were not assets of the Estate of Emil in her hands at the time of her appointment. If not assets (for lack of a previous order on the executrix or successor executor directing the rental of the real estate for the payment of debts), the rents accruing after the death of the successor executor would follow the principal estate and belong to Emil's heirs, In re Bartels' Estate, 238 Mo.App. 715, 187 S.W.2d 348, loc. cit. 350, unless the fact that the previous accounting of Lucille for the rents would change the situation, a point which it is not necessary for us to decide. If the rents were assets of the estate, it would be the duty of Mary Jane to collect and take such money into her possession, Section 462.010 RSMo 1949, V.A.M.S. and inventory the same as an asset of the estate. Section 462.020 RSMo 1949, V.A.M.S. In neither of these contingencies do we perceive any conflict of interests disqualifying Mary Jane. The latter swore in her application for letters that she would "make a perfect inventory of the assets of said estate not yet administered upon" and faithfully perform all things required of her by law touching the administration. In her testimony she testified that she would follow the advice of her lawyer and the orders of the probate judge in administering the estate. No abuse of discretion is indicated in this connection.

With reference to the point that relators' claims as creditors to a one-half interest in certain real estate are in conflict with the claims of the heirs of Kate, including Mary Jane, once again the evidence does not support relators' contentions. A one-half interest in the following real estate was listed in the inventory of Emil: four tracts of 40, 80, 80 and 160 acres, respectively, in Section 13, Township 47, Range 5, and three tracts of 20, 80 and 160 acres, respectively, in Section 1, Township 48, Range 5. There was evidence that Kate was the record owner of a one-half interest in this land, and that it was not included in the inventory of the assets of her estate. But there is no evidence in the record, oral or documentary, that Kate's heirs now claim a one-half interest in this land, and there is no evidence that she deeded it to

Emil. Although Mary Jane testified that she owned a one-third interest in the lands of which Kate died seized, she did not claim that Kate died seized of the lands above described, or that she or any of the other heirs of Kate had any interest whatever in them. Nor was it shown that relators had asserted, or that Mary Jane had denied, relators' claim that the Estate of Emil owned the entire interest in these lands. There was a failure of proof that there is any real and substantial controversy as to the ownership of a one-half interest in these lands.

Nor does the evidence indicate that there is reasonable and probable cause to believe that the entire interest in the real estate belongs to the Estate of Emil. There was evidence that Emil paid taxes on and was in possession of the whole, but no evidence that he did so *under a claim of ownership* of the whole. The record title to a one-half interest is in Kate, and there is no evidence of any deed from Kate to Emil. In a suit to quiet title relators, relying upon a lost deed, would be obliged to establish its original existence, its loss and the material parts of it by clear and convincing evidence. 74 C.J.S., Quieting Title, § 81, p. 128. Although in this proceeding it was not necessary to *establish* that the Estate of Emil owned the whole interest in the property, Davis v. Roberts, supra, 226 S.W. loc. cit. 664, relators, in showing that there was reasonable and probable cause to believe that the whole interest belonged to the estate, were required to prove more than appeared here, where the missing link is largely based upon the speculative opinion of a lawyer that there is an outstanding and unrecorded deed from Kate to Emil. Other possibilities are that Kate conveyed her interest by an unrecorded deed to some third person, or that she died seized of her interest and that by mistake it was not included in her inventory. We find no abuse of discretion on the part of the probate judge in failing to find under this fragmentary and inconclusive evidence that Mary Jane was disqualified on the ground of conflicting interests.

Relators are anticipating a situation which has not yet developed. If and when a conflict of interests arises between the two estates Mary Jane should relinquish her administratorship as to one of them. Upon the development of a real and substantial controversy between Mary Jane and the creditors of the Estate of Emil based upon hostile, rival claims to the one-half interest in the real estate, she should stand aside for the appointment of another to protect the interests of the estate against her antagonistic claims. If she refuses voluntarily to do so her letters can be revoked under Section 461.500 RSMo 1949, V.A.M.S. for unsuitability to execute the trust. Until such conflict and controversy actually arise, however, Mary Jane is qualified, and enjoys priority of right, to act as administratrix.

The other points raised by relators in their motion for a rehearing constitute mere reargument of points fully analyzed in the original opinion.

The Commissioner therefore recommends that the motion for a rehearing or to transfer the cause to the Supreme Court of Missouri be overruled.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

Accordingly, relators' motion for a rehearing or to transfer cause to the Supreme Court of Missouri is overruled.

ANDERSON, P. J., and SAM C. BLAIR and FRANKLIN FERRISS, Special Judges, concur.